LEON A. SEROTA and Another, Plaintiffs, *v.* DAVID SEROTA and Another, Defendants.

Supreme Court, Special Term, Queens County, March 4, 1938.

*Simon & Pollack [E. L. Simon* of counsel], for the plaintiffs.

*Joseph & Demov [Lazarus Joseph* of counsel], for the defendants.

KADIEN, J.  This is an action to compel the specific performance of a subscription agreement to which the plaintiffs and the defendants were parties.  It was therein agreed to purchase and acquire certain capital stock in the Park City Pure Ice Co., Incorporated, a Connecticut corporation, and to limit and restrict the alienation of such stock in the manner therein provided.

The corporation involved has a total of some three hundred and fifty shares of stock outstanding. The plaintiff Leon A. Serota, owning thirty-two shares, and the plaintiff Hardtla, owning fifteen shares, seek to set aside the sale and transfer of ten shares of such stock from the defendant Balze to the defendant David Serota. The defendant David Serota owns ninety-two shares of such stock, which includes the ten shares in dispute. The balance of the stock is owned by four other stockholders, not parties to the action.

It was established, among other things, that since the corporation was organized in 1930, there were a number of changes in the stock holdings, without notice to all other stockholders, and without first offering the stock for sale to them. In fact the plaintiff Leon Serota participated in one of such changes, in that he acquired sixteen additional shares from his brother in April, 1930, and the plaintiff Hardtla sold five shares, without a prior offer to all other stockholders.

It is significant that the gravamen of this action is, as alleged in paragraph "fourteenth" of the complaint, the failure of the defendant Balze to offer his ten shares of stock for sale to *all* of the stockholders of the corporation before selling and transferring the said stock to the defendant David Serota, one of the stockholders.

The subscription agreement entered into on March 15, 1930, to which all the parties to this action were signatories, provided among other things: " We further agree that none of the stock subscribed for shall be sold by us to any other person without first being offered to the other stockholders of the corporation at the book value."

On the face of each certificate of stock there *is* inscribed the following: " This certificate of stock shall not be transferred to a person who is not a stockholder until it has first been offered for sale to the other stockholders at the book value of the stock as shown on the books of the corporation, but in case the offer to sell is not accepted within thirty days after such offer has been made this condition shall no longer attach."

In the certificate of incorporation there is a provision as follows:

" *Seventh.* No certificate of stock shall be transferred to a person who is not a stockholder until it has first been offered for sale to the other stockholders at the book value of the stock as shown on the books of the corporation, but in case the offer to sell is not accepted within thirty days after such offer has been made this condition shall no longer attach, provided, however, that this condition be set forth in the By-Laws, on the stock subscription blanks and on the stock certificates."

In an attempted compliance with paragraph " seventh " of the charter, above set forth, the incorporators enacted by-laws, at the end of section 39 whereof is found the following clause: " No certificate shall be offered for sale by any stockholder without first offering it to the other stockholders at the book value thereof."

However, the plaintiffs, in their brief, predicate their right to relief upon the subscription agreement exclusively, and at the trial claimed that agreement to be ambiguous, thereby entitling them to offer oral proof to explain their understanding of its terms. The court permitted the plaintiffs considerable latitude in their proof in support of the construction urged by them. It is their contention that they are entitled to the transfer of so much of the ten shares of stock as was acquired by the defendant David Serota from the defendant Balze, in proportion to their respective stockholdings as of the date of such sale on March 24, 1936. They urge that the agreement be construed not alone that stock in the corporation could not be sold to any person who was not a stockholder, without first offering it to all the existing stockholders, but that it could not be sold to any stockholder without first offering it to all of the existing stockholders, and that all of the stockholders, or such of their number as desired to purchase the stock offered for sale, were entitled to purchase in the proportion of their existing interests.

In the opinion of the court there is no ambiguity in the subscription agreement. " The law presumes that the parties understood the import of their contract, and that they had the intention which its terms manifest." (6 R. C. L. 835; *Knight* v. *Kitchin*, 237 App. Div. 506, 511.) In fact the plaintiffs have admitted the absence of ambiguity, because upon the trial they moved to amend paragraph 6 of the bill of particulars, so as to state that " the intent of all the parties is based with reference to alienation of corporate stock " in (a) provisions of the by-laws, and (b) subscription agreement of March 15, 1930.

The words of a contract must be construed in their grammatical and ordinary sense, unless it would lead to absurdity or inconsistency and defeat the purpose for which the agreement was entered into. Language which is positive and explicit should be given its obvious meaning.

It is apparent from a reading of the subscription agreement, the charter, the inscription on the stock certificates, and the by-laws, that the subscribers intended to keep their association intact in the event one of them desired to sell his holdings, by requiring him to first offer the stock to existing stockholders before bringing new associates into the enterprise. As said in *Barrett* v. *King* (181

Mass. 476, 479; 63 N. E. 934, cited in *Hassel* v. *Pohle*, 214 App. Div. 654, 657): " ' Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. * * * There seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm.' The motives for the retention of such right in a small business corporation, where substantial changes in ownership of stock well might be accompanied by a change of managing officers, are obvious."

It is to be noted that the subscription agreement contains no provision for any plan for stock control of the corporation. No provision is contained therein, specifying what course should be followed in the event more than one stockholder desires to buy, or in what manner the stock shall be apportioned or allocated. There is nothing to indicate any intention that the relative stockholdings originally subscribed to by the signers of the agreement should be continued in the same proportions in the event of a change in such holdings.

The court must construe the agreement as it is, and not as the plaintiffs would like it to be. The construction sought to be placed thereon by the plaintiffs fails to find support in the agreement or in the evidence which they adduced upon the trial. It is true that the language of the portion of section 39 of the by-laws hereinbefore referred to, is somewhat different from that contained in the other documents above set forth, in that no reference is made, in so many words, to a sale of stock to persons who are not stockholders. Nevertheless that by-law is not inconsistent with or repugnant to the provisions of the other documents, for the words omitted are necessarily implied therein. Moreover, the plaintiffs' claim to relief herein is predicated principally upon the subscription agreement of March 15, 1930, which was entered into by the parties after the certificate of incorporation had been executed and filed and the by-laws of the company adopted.

The court is of the opinion that the language in the subscription agreement restricting the alienation of the stock of the corporation clearly indicates a restriction only as to outsiders or other persons and not the parties to the agreement. In view of the fact that both of the defendants were parties to the subscription agreement, and stockholders in the corporation, it follows that the sale was not made to any outsider or " other person " and consequently there was no violation of the agreement.

Accordingly, judgment is granted to the defendants dismissing the complaint on the merits, with costs. Submit judgment.