[L. A. No. 26896.   In Bank.   May 5, 1964.]

TU-VU DRIVE-IN CORPORATION et al., Plaintiffs and Appellants, v. DELLA M. ASHKINS et al., Defendants and Respondents.

Higgs, Fletcher & Mack, Vincent E. Whelan and Joel C. Estes for Plaintiffs and Appellants.

Pentoney & Sjogren and Howard A. Pentoney for Defendants and Respondents.

TOBRINER, J.—This case presents the issue of whether a corporation may enforce a bylaw restricting alienation of stock against a nonconsenting stockholder who acquired his stock prior to the enactment of the bylaw. We have concluded that the corporation may enforce such a bylaw. Defendants raise additional issues of waiver and estoppel which, as we point out below, are without merit.

Plaintiff Russo owns 54 per cent of the stock of the Tu-Vu Drive-In Corporation. Defendant Ashkins owns 39 per cent of the stock; a third party owns 7 per cent. All three stockholders acquired their shares when the corporation was organized in 1958. The corporation, by the written consent of Russo as majority stockholder, adopted the contested bylaw on June 24, 1960. As amended on June 23, 1961, it stipulated that Tu-Vu shares could be transferred to an outsider provided that the owner of the shares first offered them to the

other shareholders and that, if the shareholders declined to purchase the stock, the owner offer it to the corporation, at the price and under the same terms as offered to the outsider. On July 8, 1960, the board of directors of Tu-Vu adopted a resolution providing for application to the commissioner of corporations for approval of replacement of the original shares with certificates containing the new bylaws. At a meeting on October 14, 1960, the board ordered that the written assent of the majority stockholder adopting the bylaw be filed in the corporate minute book.

On December 7, Russo obtained an option to purchase Ashkins' stock. Russo relinquished the option on January 7, 1961. Tu-Vu issued new stock certificates containing the bylaw restriction and on January 31 placed them in escrow with the commissioner of corporations. Neither Russo nor the corporation gave Ashkins actual notice of the bylaw.

On May 1, 1961, Ashkins granted to defendant Sero Amusement Company, a business competitor of Tu-Vu, an option to purchase her stock in Tu-Vu. Sero did not exercise this option and it expired on April 30, 1963.[1]

Plaintiffs initiated the instant action on July 20, 1961, seeking a declaratory judgment sustaining the validity of the bylaw which regulated the transfer of Tu-Vu shares. The trial court entered judgment that Ashkins possessed a vested right to retain her shares free of restrictions upon alienation. Plaintiffs appeal that judgment.

In determining the validity of the bylaw we must answer two questions: first, whether the Corporations Code authorizes the adoption of the bylaw, and second, assuming such authorization, whether the bylaw unconstitutionally impairs defendant Ashkins' contract with the corporation.

We turn to the first of these questions. Corporations Code section 501 provides that "The by-laws of a corporation may make provisions not in conflict with law or its articles for: ... [subdivision] (g) Special qualifications of persons who may be shareholders, and reasonable restrictions upon the right to transfer or hypothecate shares."[2] The problem

---

[1] Ashkins and Sero renewed the option upon the expiration of the original agreement.

[2] Corporations Code section 500 provides that "Bylaws may be adopted, amended, or repealed by the vote or the written assent of shareholders entitled to exercise a majority of the voting power of the corporation. ..."

therefore focuses upon the question of whether the present "restriction upon the right to transfer" is reasonable.[3]

■ The term "reasonable" imports a twofold requirement. The bylaw must not constitute an unreasonably restrictive curtailment of the right of alienation (see O'Neal, *Restrictions on Transfer of Stock in Closely Held Corporations* (1952) 65 Harv.L.Rev. 773, 777-778; Cataldo, *Stock Transfer Restrictions and the Closed Corporation* (1951) 37 Va.L.Rev. 229, 232), and it must not otherwise unreasonably deprive the shareholder of "substantial rights." (*Spencer* v. *Hibernia Bank* (1960) 186 Cal.App.2d 702, 736, 737 [9 Cal. Rptr. 867]; *Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 552 [305 P.2d 20].) ■ A bylaw reserving a right of first refusal in other shareholders or the corporation does not unreasonably restrict the right of alienation. (See *Vanucci* v. *Pedrini* (1932) 217 Cal. 138 [17 P.2d 706]; O'Neal, *Restrictions on Transfer of Stock, supra*, 65 Harv.L.Rev. 773, 777.)

Similarly, ample authority holds that the bylaw, although it restricts defendant Ashkins' right to transfer without her consent, does not unreasonably deprive her of a "substantial right." In *Bennett* v. *Hibernia Bank, supra*, 47 Cal.2d 540, 552, we determined that the reasonableness of bylaws adopted subsequent to the acquisition of the shareholder's stock and without his consent must be considered in light of its purpose and the extent of the impairment of the rights of the complaining shareholder.[4]

---

[3]Courts have, of course, denied enforcement of restrictions on transferability for other reasons than those urged here. In *Mancini* v. *Setaro* (1924) 69 Cal.App. 748 [232 P. 495], the court refused to enforce a bylaw giving the corporation, but not the other shareholders, a right of first refusal since the corporation failed to show its willingness to purchase the shares. In *Mancini* v. *Patrizi* (1927) 87 Cal.App. 435 [262 P. 375], the court held invalid the same bylaw upon the ground that it violated the then section 309 of the Civil Code which prohibited the corporation from impairing capital to purchase its own shares. (See *Vanucci* v. *Pedrini* (1932) 217 Cal. 138, 143 [17 P.2d 706].) And in *Mancini* v. *Patrizi* (1930) 110 Cal.App. 42 [293 P. 828], the court refused to enforce the bylaw against a transferee for value without notice of the restrictions on alienation. None of these reasons for denying enforcement applies to the instant case.

[4]*Spencer* v. *Hibernia Bank* (1960) 186 Cal.App.2d 702, 738 [9 Cal. Rptr. 867] applied this test to a bylaw which retroactively severed the descendability feature of membership interests in the Hibernia Bank, and concluded that when viewed in light of the intent of the bylaw to effectuate the original corporate purpose to provide banking services for

Bylaws restricting transfer in closed corporations are frequently essential to a successful enterprise; they perform an important function in precluding unwanted intrusions by outsiders; they preserve the integrity of the functioning entity. Such bylaws are "necessary for the protection of the corporation and its stockholders against rivals in business or others who might purchase its shares for the purpose of acquiring information which might thereafter be used against the interests of the company. ..." (*Mancini* v. *Patrizi* (1927) 87 Cal.App. 435, 437 [262 P. 375]; see generally Cataldo, *Stock Transfer Restrictions, supra,* 37 Va.L.Rev. 229, 230.)

In the light of the legitimate interests to be furthered by the bylaw, Ashkins' asserted right becomes "innocuous and insubstantial." (*Royal China, Inc.* v. *Regal China Corp.* (Sup.Ct. 1951) 107 N.Y.S.2d 901, modified 280 App.Div. 921 [116 N.Y.S.2d 926].) The bylaw merely proscribes Ashkins' choice of transferees while insuring to her the price and terms equal to those offered by the outsider.

The California courts have sustained bylaws curtailing rights which were far more substantial than the right presently claimed. Thus in *Wilson* v. *Cherokee Drift Min. Co.* (1939) 14 Cal.2d 56 [92 P.2d 802], we upheld the action of the board of directors in levying an assessment of $23,000 upon shares held by a nonconsenting shareholder who had purchased his shares prior to passage of the article authorizing the assessment.[5]

---

an exclusive group, "the power to transfer membership or grant it through heirship, exercisable only in the future, was insubstantial and minor. ..."

[5] Accord *Silva* v. *Coastal Plywood & Timber Co.* (1954) 124 Cal.App.2d 276 [268 P.2d 510] [bylaw retroactively removing restriction upon alienation]; *Heller Inv. Co.* v. *Southern T. & T. Co.* (1936) 17 Cal.App.2d 202 [61 P.2d 807] [amendment to articles abrogating common shareholders' voting power by issuance of preferred shares]; *DeMello* v. *Dairymen's Co-op. Creamery* (1946) 73 Cal.App.2d 746, 747 [167 P.2d 226] [bylaw eliminating right of shareholders to immediate payment of proportionate share of association's net worth]; *Spencer* v. *Hibernia Bank, supra,* 186 Cal.App.2d 702 [bylaw retroactively severing descendability feature of membership in bank]; cf. *Bornstein* v. *District Grand Lodge No. 4* (1906) 2 Cal.App. 624 [84 P. 271] [holding invalid a bylaw reducing amount payable to widow of fraternal association member upon insurance contract issued by association and paid for by member]. *Bornstein,* cited in *Bennett* (p. 552) is distinguished in *Spencer,* which states that "*Bornstein* v. *District Grand Lodge No. 4* (1906) 2 Cal.App. 624 [84 P. 271], cited in *Bennett,* as well as by appellants,

■ We may deal briefly with defendants' contention that the bylaw unconstitutionally impairs Ashkins' contract with the corporation. The California cases have clearly held that the power to regulate the rights of corporate shareholders, reserved to the state by article XII, section 1, of the Constitution, forms part of the contract between the shareholder and the corporation. (*Wilson* v. *Cherokee Drift. Min. Co., supra,* 14 Cal.2d 56, 58; *Silva* v. *Coastal Plywood & Timber Co., supra,* 124 Cal.App.2d 276, 278; see generally Ballantine & Sterling, California Corporation Laws (4th ed. 1963) 6.) The shareholder thus acquires his shares subject to the power of the corporation to alter its contract with him pursuant to statutory authority. (*Wilson* v. *Cherokee Drift Min. Co., supra,* 14 Cal.2d 56, 58; *Silva* v. *Coastal Plywood & Timber Co., supra,* 124 Cal.App.2d 276, 278.)[6]

Nor can we accept defendants' additional contentions as to waiver and estoppel. ■ Defendants argue that plaintiffs waived the right to enforce the bylaw when Russo entered into an option agreement with Ashkins without advising her of the bylaw restrictions. Since the bylaw sought to bar sales to outsiders only (cf. *Serota* v. *Serota* (1938) 168 Misc. 27 [5 N.Y.S.2d 68]; *Gibbon* v. *3920 Lakeshore Drive Bldg. Corp.* (1941) 310 Ill.App. 385 [34 N.E.2d 109]) we cannot conclude that Russo, by forming an option agreement with Ashkins, intended to waive the restriction upon sales to outsiders generally. (See *Rheem Mfg. Co.* v. *United States* (1962) 57 Cal.2d 621, 626 [21 Cal.Rptr. 802, 371 P.2d 578].)

■ Finally, defendants contend that an estoppel bars plaintiffs from enforcing the restriction in that they failed to notify defendants of the bylaw until after Ashkins granted

relies upon *Langan* v. *American Legion of Honor* (1901) 34 Misc. 629 [70 N.Y.S. 663], to the effect that the power to make changes in the bylaws that had a retroactive effect 'had reference to changes which should not impair the *substance* of the contract.' ..."

[6]It is interesting that the United States Supreme Court, in discussing the power of a California bank to prevent outsiders from acquiring stock, noted that the bank could adopt a bylaw under section 501, subdivision (g), to restrict the right of its shareholders to transfer their shares to outsiders. (*Eccles* v. *Peoples Bank* (1947) 333 U.S. 426, 433 [68 S.Ct. 641, 92 L.Ed. 784, 789-790].) Moreover, *Pendergast* v. *Bank of Stockton* (Cir.Ct.D.Calif. 1871) 19 F.Cas. 135 (No. 10,918), held that a corporation organized under the predecessor of section 501, subdivision (g), providing that the stock in the corporation "shall be transferable in such manner as shall be prescribed by the by-laws," may adopt a bylaw which retroactively precludes transfer by a shareholder indebted to the corporation.

an option to Sero. As we noted in our statement of facts, after the expiration of the first option agreement of May 1, 1961, Ashkins and Sero entered into a new option agreement. Since they did so subsequent to the filing of the present suit by plaintiffs, they can hardly claim lack of knowledge of the restriction in question.

The judgment is reversed and the trial court directed to enter judgment declaring that the bylaw in question is valid and enforceable against the defendants.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.