[Civ. No. 21365.    First Dist., Div. Three.    June 12, 1964.]

KELLER STREET DEVELOPMENT COMPANY, Plaintiff and Appellant, v. DEPARTMENT OF INVESTMENT, DIVISION OF CORPORATIONS, Defendant and Respondent.

J. Albert Hutchinson for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Victor Griffith and Robert E. Murphy, Deputy Attorneys General, for Defendant and Respondent.

DEVINE, J.—Keller Street Development Company held a stockholders' meeting at which its articles of incorporation purportedly were amended to provide that its shares of stock should be assessable. The minority stockholders protested that this could not be done without the approval of the Commissioner of Corporations. The company contended that a permit was not necessary, but, reserving this contention, applied to the commissioner for a permit. The commissioner held a hearing and ruled: (1) That the law requires the commissioner's permit to change previously nonassessable shares to become assessable. (2) That a meeting of the corporation had been held at which the amendment had purportedly been made. (3) That for many years past, persons acquiring applicant's shares have relied upon the fact that said shares are fully paid and nonassessable. It is reasonable to assume that many of said persons would not have acquired said shares if they had been assessable. (4) That the corporation had failed to produce substantial evidence demonstrating the necessity for making the shares assessable. (5) That the purpose of the proposed amendment is to freeze out the minority stockholders, not to satisfy the legitimate needs of the corporation.

The corporation then commenced this proceeding for writ of mandate directing respondent to set aside the order, and to withdraw its notice of hearing or, alternatively, to issue its permit; and for a declaratory judgment declaring several provisions of the Corporations Code to be unconstitutional. The trial judge decided (1) that the findings of fact of the hearing officer which had been adopted by the commissioner are supported by substantial evidence; (2) that the commis-

sioner has no jurisdiction over the shareholders' meeting, but that the amendment to the articles of incorporation is not effective and cannot be carried into execution without the permit, and that the permit is required under section 25009 of the Corporations Code; (3) that applicant corporation take nothing; (4) that the alternative writ be discharged. The Department of Investment appealed from that part of the judgment which declared that the commissioner does not have jurisdiction over the meeting itself of the stockholders, but later dismissed its appeal. The corporation appeals generally.

Counsel for appellant is of the belief that declaratory relief has been denied and that the corporation is entitled to a declaration of its rights. We are not disposed to debate whether the judgment, in form, is declaratory. It seems to us that it is, but since appellant wishes a declaration anyway, we shall regard the judgment as not only denying the writ but also as declaring the law to be, against appellant's contention, that the permit is required.

## I. *Necessity for Permit*

■ Section 25009 of the Corporations Code, so far as relevant, provides as follows: "(a) 'Sale' or 'sell' includes every disposition, or attempt to dispose, of a security or interest in a security for value. 'Sale' or 'sell' includes all of the following, whether done directly or by an agent, circular letter, advertisement, or otherwise: An offer to sell; an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale; a taking of a subscription; an exchange; any change in the rights, preferences, privileges, or restrictions on outstanding securities."

We conclude that under this section a permit of the Commissioner of Corporations is necessary in order to make effective an amendment to the articles of incorporation which would make previously nonassessable shares assessable.

■ 1. Since the word "sale" is defined by the statute itself, it should be construed according to the statute's definition. (*Rideaux* v. *Torgrimson,* 12 Cal.2d 633, 636 [86 P.2d 826]; *People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 638 [268 P.2d 723].) Besides, section 25001, at the beginning of the Corporate Securities Law, provides that: "Unless the provision or the context otherwise requires, the definitions and general provisions set forth in this chapter govern the construction of this division."

2. A "sale," within the definition enacted by the Legislature in section 25009, includes "any change in the rights, preferences, privileges, or restrictions on outstanding securities." We agree with the commissioner and the trial judge that to allow that which was not previously assessable to become assessable is to change the rights of the shareholders. Majority stockholders can change the value of all of the shares as much by assessing them as by diluting their worth by the issuance of additional shares. Of course, if the articles provide for assessability, no permit is necessary and the corporation may assess for lawful purposes by following the code sections referring to assessments. But where the shares are nonassessable according to the articles and it is sought to make them assessable, the rights of the shareholders would be changed. In his opinion and decision, the Commissioner of Corporations, the Honorable John G. Sobieski, expressed his judgment this way: "As a matter of fact it is difficult to imagine a more fundamental change in outstanding securities than to make them assessable. Assessable shares are like shares owned in a margin account. The owner is constantly subject to the danger of being sold out unless he puts up more money, whenever demanded. Consequently, the requirement of a permit in this case is clear. Otherwise, the provisions of Sec. 25009 (a), quoted above, are made meaningless. It is not necessary to detail the dangers to investors from assessable shares. The experience of American business has caused their use to be generally shunned."

3. When shares have been made assessable, the drastic remedy of sale or forfeiture of the shares is available to the corporation. (Corp. Code, §§ 2707, 2708.) While the articles remain without specific authority of the corporation to make shares assessable, the shareholder has a *right* to hold them free of assessment and its potentially disastrous results. (Corp. Code, § 2700.)

4. It is argued by appellant that the action of the commissioner is an interference with the internal affairs of the corporation, and that section 25009 applies only where securities are to be "issued." These contentions are answered by *Western Air Lines, Inc.* v. *Sobieski*, 191 Cal.App.2d 399 [12 Cal.Rptr. 729], wherein there was an attempted change of the right of common stockholders so that they would no longer have the right of cumulative, but only of straight, voting. This change, it was held, constituted a *sale* because it was a change in the rights, preferences, privileges, or restrictions on outstanding securities.

If it is a sale when a change in the method of electing directors is involved, it would seem to be even more a sale when there is such an important change as creating assessability. The directors elected by straight, as distinguished from cumulative, voting, may not act in a way that would directly affect the value of a stockholder's shares; for although, of course, the decisions of the directors as a whole will have an ultimate effect on the value of the shares through the operation of the enterprise, the one or more minority directors elected by cumulative voting do not attain control of the business. The minority directors serve to give and to obtain information and advice for the stockholders, and to put something of a brake on the majority directors. The effect of cumulative voting on the value of the shares, however, would appear to be not nearly so direct as is that of a change from nonassessability to assessability.

In 2 Ballantine & Sterling, California Corporation Laws (4th ed. 1962) at page 900A, it is stated: ''A non-assessable stock may be amended to make it assessable; if so, this would require a permit as would the reverse.''

## II. *Requirement of Permit Extends to Securities Already Issued*

Appellant argues that permits are required only for an original issue of stock. It argues that the Corporate Securities Law is for the protection of the public at large, not for that of those who have become stockholders. But Corporations Code section 25009 expressly refers to a change in the rights, preferences, privileges, or restrictions on outstanding shares as being a sale, and section 25500 generally forbids sale without a permit. It is obvious that the Legislature *did* intend to protect actual shareholders as well as potential ones. Of course, they are often more in need of safeguards than is the general public; only an infinitesimal number of the mass of the population may have any interest in the company or need any protection.

In *Western Air Lines, Inc.* v. *Sobieski,* 191 Cal.App.2d 399 [12 Cal.Rptr. 719], a like argument was made, that the amendment is an internal affair of the corporation; but section 25009 was held applicable, in the matter of amendment to allow cumulative voting, even to a foreign corporation. (Applicant Keller Street Development Company is a California corporation.)

We take note of appellant's argument that the provisions

of the code relating to assessment of shares make no reference to a permit from the Commissioner of Corporations. ▆ But the procedure relating to assessments may be used only by corporations which have reserved the power to assess in their articles, which a corporation may do (Corp. Code, § 305), in which case the Commissioner of Corporations will have passed on the original permit with the assessability feature in mind; or by corporations which have amended their articles to authorize assessments (Corp. Code, § 3634, subd. (a))—but this is the very change of rights which is the subject of this case and which we hold requires favorable action by the commissioner at this stage. ▆ There is no question that a corporation has the power to amend its articles to provide for the power of assessment. (*Wilson* v. *Cherokee Drift Mining Co.* (1939) 14 Cal.2d 56 [92 P.2d 802].) But since 1945 (Stats. 1945, ch. 399, p. 853) changes in the rights of outstanding securities have been subject to permit, as they are presently by the successor statute, section 25009. Thus, the code sections relating to amendment of the articles, or to the procedure of assessment, have to do with those operations, and do not make explicit reference to permits, while the Corporate Securities Law (Corp. Code, §§ 25000-26104) refers to regulation of "sales" as technically defined therein.

Subsequent to argument of this case, the Supreme Court has decided *Tu-Vu Drive-In Corp.* v. *Ashkins,* 61 Cal.2d 283 [38 Cal.Rptr. 348, 391 P.2d 828], which appellant believes helpful to its position. It was held in *Tu-Vu* that an amendment may be made to a bylaw, which restricts the right of alienation of shares by reserving the right of first refusal in other shareholders or the corporation, and that this may apply to shares outstanding. But in that case, the board of directors applied to the Commissioner of Corporations for approval of the replacement of the original shares with certificates containing the new bylaws. Thus, the necessity of obtaining permission was not passed on by the court, because it was impliedly conceded.

### III. *Applicability, Constitutionality and Effect of Corporations Code Section 25507*

▆ Section 25507 provides that if the commissioner finds that the plan of business and the proposed issuance of securities are fair, just and equitable, and that the issuance will not work a fraud on the purchaser, he shall issue a permit on such terms and conditions as he shall provide. That the word

"issue" includes such a change in present shareholders' existing rights as mentioned in section 25009 is a necessary conclusion, else section 25009 would be rendered useless.

▇▇ Appellant's argument that the words "fair, just and equitable" are too vague to create a proper standard has been answered in *Agnew* v. *Daugherty*, 189 Cal. 446, 448-449 [209 P.34], wherein the provision in the Corporate Securities Law making the granting of a permit dependent on a finding that the proposed plan is "not unfair, unjust or inequitable" was upheld. (See, also, *Gospel Army* v. *City of Los Angeles*, 27 Cal.2d 232, 249 [163 P.2d 704].)

IV. *Facts and Decision on Evidence to Support Judgment*

▇▇ It is not perfectly clear, from appellant's briefs, whether appellant attacks only the jurisdiction of the Commissioner of Corporations, or his decision also, if the question of jurisdiction were decided against appellant. Because appellant's briefs make reference to the subject, however, we shall consider the subject of sufficiency of the evidence to support the decision of the commissioner and the judgment of the trial court.

For several years there has been disagreement between the minority stockholders of Keller Street Development Company, which formerly was Maier Brewing Company, and the majority stockholder, Paul Kalmanovitz. This disagreement reached its apex when the majority holder caused a sale to be made of a large portion of the assets of the company to another corporation of which he was majority stockholder. This led to litigation, wherein the minority stockholders sought rescission of the sale. The superior court denied rescission. The judgment was appealed, and during the time of the hearing before the Commissioner of Corporations of the proceedings now before us, and the hearing before the superior court, and oral argument before this court, the appeal was pending. Since the oral argument, the District Court of Appeal has reversed the judgment. (*Efron* v. *Kalmanovitz,* 226 Cal.App.2d 546 [38 Cal.Rptr. 148].)

To the hearing officer, appellant presented three reasons for asserted need of the power of assessment of shares:

1. The first was that in event of reversal of the judgment in the *Efron* case, the corporation would be obliged to pay to the purchaser corporation the entire amount received, plus additional sums for improvements made by the purchaser. The decision of the District Court of Appeal in the *Efron*

case has not become final, and if and when it does become so, there will still be much to be done before rescission is effectuated. Appellant in effect asked the commissioner to speculate that in event rescission ultimately were decreed, the minority stockholders would have to contribute to the price of restitution. Although the *Efron* litigation has gone far beyond the stage at which it was during the commissioner's hearing, it is proper to consider the proposal for assessability in the light of the facts as they were presented to the commissioner and to the trial court. As the case then stood, there was no need for additional funds.

2. The second theory was that by reason of the sale mentioned above, the company was in danger of falling into the category of a personal holding company and subject to 85 per cent income tax. But by the time of the conclusion of the hearings, the company had acquired properties which would take it out of that class.

3. Finally, the corporation showed that a decision had been rendered which required payment of about $350,000 in federal income and excess profits taxes, and interest thereon; but the decision had been appealed. The financial statements of the corporation as of December 31, 1961, and May 31, 1962, (the only ones submitted) showed net worth of the corporation to be well over $2,000,000. The hearing officer held that it had not been shown that the corporation had not been able to borrow through the usual lending agencies, and pointed out that Mr. Kalmanovitz, who, presumably, would know most about its affairs and its prospects, was not produced as a witness.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied July 9, 1964, and appellant's petition for a hearing by the Supreme Court was denied August 5, 1964.