OPINION
{¶ 1} Plaintiff-appellant Michael Ramun appeals the Mahoning County Common Pleas Court's denial of his motion for a preliminary injunction. Michael is a minority shareholder of Allied Consolidated Industries, Inc. (ACI). Defendant-appellee John Ramun is the majority shareholder of ACI. Michael, by way of a motion for preliminary injunction, sought to prevent John from attempting to unilaterially impose restrictions upon the transfer of ACI stock. Two issues are raised in this appeal. The first issue is whether the magistrate was required and did issue findings of fact and conclusions of law in determining that the preliminary injunction should not be granted. The second issue is whether the trial court erred in adopting the magistrate's decision denying the preliminary injunction. For the reasons expressed below, the judgment of the trial court is affirmed.
 STATEMENT OF CASE AND FACTS {¶ 2} John and Michael, brothers, owned ACI, a closely held corporation, which was originally incorporated in 1973. John was the president of the corporation and owned 75% of the shares. (Tr. 111). Michael was the vice president and treasurer of the corporation and owned 25% of the shares. (Tr. 80, 84, 96). On May 3, 2004, Michael resigned as an ACI employee. (Tr. 84). According to both Michael and John, Michael told John to buy his interest/shares in the company. (Tr. 84, 88, 122).
 {¶ 3} On May 13, 2004, Michael received a letter informing him of a special stockholder meeting for ACI that was to be held on May 21, 2004. (Tr. 87). However, on May 20, 2004, John unilaterally enacted a resolution, without holding a stockholder meeting, which imposed for the first time restrictions on the sale or transfer of ACI stock. (Tr. 90). That same day, Michael filed a complaint in Mahoning County Common Pleas Court for breach of fiduciary duty and sought an injunction to prohibit the implementation of the stock restriction.
 {¶ 4} The trial court granted a Temporary Restraining Order (TRO) on June 18, 2004, that extended to the preliminary injunction evidentiary hearing date on July 16, 2004. At the preliminary injunction evidentiary hearing, John admitted that the unilateral stock restriction enacted on May 20, 2004, was in violation of ACI's code of regulations because it was adopted without a shareholder meeting. (Tr. 145). However, Michael still sought an injunction to prevent John from enacting any other such stock restrictions because, in his opinion, it is against Ohio law to impose restrictions on already purchased stock and, in addition, such a restriction would violate the fiduciary duty John owes to him.
 {¶ 5} After the hearing, the magistrate issued its ruling, which denied the preliminary injunction. It reasoned that, "the laws of the State of Ohio and the defendant corporation's Code of Regulations permit the Defendants to enact regulations concerning the sale or transfer of stock and the composition of the Board of Directors." (07/16/04 Decision). However, the magistrate did find that John had failed to comply with the laws of Ohio and ACI's corporate code of regulations when he enacted the May 20, 2004 resolution and as such said resolution was void. (07/16/04 Decision).
 {¶ 6} Michael then timely moved, pursuant to Civ.R. 52, for findings of fact and conclusions of law. The magistrate denied this request stating, "The magistrate finds that his decision filed July 16, 2004 constitutes findings of fact and conclusions of law. As such, plaintiff's request for additional findings of fact and conclusions of law is dismissed." (07/22/04 Decision). Michael then filed objections to the magistrate's decision; John filed a memorandum in opposition to those objections.
 {¶ 7} On May 11, 2005, the trial court, after reviewing the parties' briefs and the magistrate's decision, adopted the magistrate's decision and denied the preliminary injunction.[1] Michael appeals from that decision.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} "THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION WHICH DID NOT INCLUDE FINDINGS OF FACT OR CONCLUSIONS OF LAW."
 {¶ 9} Michael argues that the magistrate's July 16, 2004 decision did not comply with Civ.R. 52 and 53(E)(1) because it contained no findings of fact or conclusions of law as was requested by him. He argues that once the request for findings of fact and conclusions of law was made, the magistrate had a mandatory duty to perform that task. Therefore, in the absence of performing that mandatory task, the trial court was unable to independently review the case. Thus, in his opinion, the trial court should have either recommitted the matter to the magistrate with instructions to comply with the request, or heard the matter itself.
 {¶ 10} John counters with four arguments. First, he contends that Michael did not submit proposed findings of fact and conclusions of law to the magistrate to adopt. Second, he argues that the magistrate was under time constraints because the TRO was going to expire soon and the magistrate promised a ruling before the expiration of the TRO. Third, he argues that findings of fact and conclusions of law are not required upon the granting or denial of a motion for preliminary injunction. Lastly, he argues that the magistrate's decision was sufficient under the Ohio Rules and, as such, the trial court and this Court can do an independent review of the facts and issues. Each argument will be addressed in turn.
 {¶ 11} John's first argument, which insinuates that Michael was required to submit proposed findings of fact and conclusion of law to the magistrate in order to be entitled to them, fails. Under Civ.R. 52, a party requesting findings of fact and conclusions of law is under no mandatory duty to submit proposed findings of fact or conclusions of law. The clear language of the rule states, "[w]hen a request for findings of fact and conclusions of law is made, the court, in its discretion, mayrequire any or all of the parties to submit proposed findings of fact and conclusions of law." Civ.R. 52. This language implies that unless the magistrate states that proposed findings should be submitted there is no mandatory requirement that they must be submitted.
 {¶ 12} Likewise, the second argument regarding the magistrate's time constraints is also unfounded. Although it is apparent the magistrate was under time constraints, this did not negate any duty to comply with Civ.R. 52. No case law or even the language of the rule suggests otherwise. Consequently, John's first two counter arguments fail.
 {¶ 13} That said, the third and fourth arguments both have merit. The third argument claims that findings of fact and conclusions are not required in preliminary injunction cases. John cites to State ex rel. Add Venture, Inc. v. Gillie (1980),62 Ohio St.2d 164, for this proposition. In Gillie, Add Venture claimed that Civ.R. 52 gave them the right to demand, and the court the duty to state, separate findings of fact and conclusions of law in issuing a preliminary injunction. In arguing this, Add Venture cited to Federal Civil Rule 52 and federal cases.
 {¶ 14} The Ohio Supreme Court in holding that Ohio Civil Rule 52 does not require separate findings of fact and conclusions of law stated the following:
 {¶ 15} "Civ.R. 52 by its terms concerns `judgments.' A preliminary injunction is not a judgment. Moreover, Fed.R.Civ.P.52 contains the following language: `* * * (I)n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.' Civ.R. 52 has no language parallel to the federal rule. Also, Civ.R. 52 further provides that `(f)indings of fact and conclusions of law required by this rule * * * are unnecessary upon all other motions * * *.'" Id. at 165.
 {¶ 16} The minuscule changes to Civ.R. 52 do not change the Supreme Court's analysis of this issue. Thus, findings of fact and conclusions of law were not required.
 {¶ 17} However, even if they were required, we find that the magistrate's decision adequately set forth findings of fact and conclusions of law that allowed for an independent review by the trial court.
 {¶ 18} The record is clear that the magistrate's July 22, 2004 decision clarifies that it believed it did make adequate findings of fact and conclusions of law. It was on that basis that the magistrate did not issue additional findings of fact and conclusions of law when requested to do so by Michael.
 {¶ 19} While the magistrate does not divide the entry into specific headings of findings of fact and conclusions of law, the entry does contain both. The magistrate discusses the May 20, 2004 resolution and determines that it did not comply with applicable corporate regulations and as such is void. It then stated that the laws of Ohio permit John to enact regulations concerning the sale or transfer of stock. It went on to explain that John's enactment of the right of first refusal was to protect the interest in a close, family-held corporation and thus, was acting in the best interest of the corporation. It then added the elements that must be shown for a preliminary injunction and stated that Michael failed to establish by clear and convincing evidence that he is likely to prevail on the merits. The magistrate then held that John was enjoined from enforcing the May 20, 2004 resolution, but was not enjoined from enacting restrictions upon the sale or transfer of stock in accordance with the ACI's bylaws and code of regulations. These findings appear to be adequate to comply with Civ.R. 52. Furthermore, given that a transcript of the evidentiary hearing was before the trial court for review and is before this court for review, it is difficult to find that an independent review of the issues cannot be done. Thus, additional findings of fact and conclusions of law were not needed. Therefore, considering all of the above, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE PRELIMINARY INJUNCTION."
 {¶ 21} In ruling on a motion for preliminary injunction, a trial court must consider whether (1) the moving party has shown a substantial likelihood that he or she will prevail on the merits of their underlying substantive claim; (2) the moving party will suffer irreparable harm if the injunction is not granted; (3) issuance of the injunction will not harm third parties; and, (4) the public interest would be served by issuing the preliminary injunction. Sinoff v. Ohio Permanente Med.Group, Inc., 146 Ohio App.3d 732, 741, 2001-Ohio-4186, ¶ 40. Keeping all the above in mind, the purpose of a preliminary injunction is to preserve the status quo of the parties pending a decision on the merits. Dunkelman v. Cincinnati Bengals, Inc.,158 Ohio App.3d 604, 2004-Ohio-6425. The party seeking the preliminary injunction must establish each of the elements by clear and convincing evidence. Vanguard Transp. Sys., Inc. v.Edwards Transfer Storage Co., Gen. Commodities Div. (1996),109 Ohio App.3d 786, 790.
 {¶ 22} The decision whether to grant or deny injunctive relief is within the trial court's sound discretion, and its decision will not be disturbed on appeal absent a clear abuse thereof. Danis Clarkco Landfill Co. v. Clark Cty. Solid WasteMgt. Dist., 73 Ohio St.3d 590, 604, 1995-Ohio-301.
 {¶ 23} The magistrate stated in its opinion that Michael failed to establish by clear and convincing evidence that he would prevail on the merits. It stated that the laws of Ohio and ACI's code of regulations permitted ACI and John to enact regulations concerning the sale or transfer of stock. Furthermore, it found that the May 20, 2004 resolution was not enacted in conformity with Ohio law and ACI's code of regulations. As such, the May 20, 2004 resolution was voided.
 {¶ 24} Both parties accurately admit that there is no Ohio case nor do the Ohio statutes address whether in a closely held corporation restrictions can be placed upon already acquired stocks. However, both parties cite to cases that are similar to the matter at hand, claiming it supports their proposition.
 {¶ 25} Michael first cites to First Natl. Bank of Canton v.Shanks (1945), 73 N.E.2d 93. In Shanks, the question presented to the Ohio common pleas court was whether a restriction, which required the stockholder to first offer the stock to the other stockholders, was in effect and if it was whether anything occurred which would cause the restriction to lose its effectiveness. Id. This stock restriction was a first refusal restriction that was adopted by the stockholders immediately after the corporation was formed. The restriction was printed on the stockholder's certificate of stock.
 {¶ 26} The court held that the first refusal restriction was valid. However, it did state, "that the restriction in question is not valid as a by-law because it lacked statutory authority, but that, being a reasonable restriction, it is valid as a contract between the stockholders and the The First National Bank and The Court Square Mortgage Loan Company having acquired this stock with notice of the restriction are bound by it." Id. at 99-100.
 {¶ 27} Michael contends that the above finding and a statement made by the court that The First National Bank and The Court Square Mortgage Loan Company accepted the certificates of stock with the knowledge of restriction because it was printed on the stock supports his position that John and ACI cannot now impose a restriction on the sale of the stock. He contends that because there was no restriction/right of first refusal on the sale of the stock when he bought it, John and ACI cannot now impose such a restriction. He contends that while Shanks is not directly on point, it implies that restrictions may only be imposed if the stock is acquired with notice of the restrictions.
 {¶ 28} He also cites to Sandor Petroleum Corp. v. Williams
(Tex.Civ.App. 1959), 321 S.W.2d 614. In Sandor Petroleum,
Williams filed an action for conversion of two certificates of corporate stock against Sandor Petroleum. Williams had two certificates of stock in Sandor Petroleum. After the issuance of this stock, a bylaw was passed which resulted in the cancellation of Williams original stock certificates, which were issued without restriction as to their sale or transfer. Those certificates were substituted with a certificate with restrictions concerning the sale and/or transfer of the stock. The restriction gave the corporation first option to purchase any of its stock offered for sale at a price to be fixed by appraisers. The Texas appellate court held that such action by the corporation amounted to conversion. In so holding, it stated the following:
 {¶ 29} "Such a restriction on previously unrestricted stock would unreasonably restrain and prohibit its sale and transfer and could result in depriving the owner of the full value of his stock. We do not believe that such a restraint is contemplated by Article 2.22 [of the Texas Business Corporation Act of 1955]. We do not hold that a restriction merely giving a corporation, such as Sandor Petroleum Corporation, first option to purchase its previously unrestricted stock is an unreasonable restraint on its sale and transfer. We do not hold that the additional provision that the option price shall be set by appraisers is an unreasonable restriction except in regard to unrestricted stock already issued. These questions are not before us for determination. But, an entirely different question is presented when the holder of such unrestricted stock is by an amended bylaw denied the right to demand the full price which could be had on the open market. That is the question in this case." Id. at 618.
 {¶ 30} Michael contends that the Sandor Petroleum case also supports his claim that restrictions cannot be imposed on previously acquired stock.
 {¶ 31} Lastly, he cites BH Warehouse, Inc. v. Atlas VanLines, Inc. (C.A.5, 1974), 490 F.2d 818. In BH Warehouse, BH sought to recover monetary damages from Atlas for conversion of its stock. BH acquired its shares of Atlas stock in 1949. In 1950 it entered into a voting trust with Atlas which restricted BH from alienating the stock without first giving Atlas the option to buy the stock at book value. However, this voting trust expired in 1961. In 1966, the Atlas charter was amended and stated that class A common stock (stock owned by BH) could not be sold until the shares were first offered to the corporation at a price equal to the book value of the shares plus good will. In 1967, the Delaware corporation law was amended and it stated that no restriction imposed is binding with respect to securities issued prior to the adoption of the restriction unless the holders of the securities are parties to an agreement and voted in favor of the restriction. In 1970, Atlas amended its charter again and provided that before selling class A stock, a shareholder must offer the shares to the corporation for book value. BH voted against this amendment.
 {¶ 32} The Fifth Circuit Court of Appeals held that the voting trust had expired and did not restrict BH's ability to sell its stock. Furthermore, it stated that the 1970 amendment to Atlas' charter was not binding on BH because Delaware corporation law that was in effect did not allow for the restriction to apply to BH since it neither entered an agreement containing the restriction nor voted in favor of the restriction. Lastly, it held that the 1966 amendment to Atlas' charter was also inapplicable to BH. It reasoned that since the price and the terms of the right of first refusal are very different from what BH could receive in the open market, it had not agreed to allow the corporation to make such an amendment. This was the case, even when the corporation charter's stated that the "corporation reserved the right to amend, alter, change or repeal any provision contained in the certificate of incorporation, * * * and all rights conferred upon stockholders herein are granted such to this restriction." It stated that allowing such a restriction would inflict a substantial disability upon the shareholder. Id. In reaching this determination it cited Tu-VuDrive-In Corp. v. Ashkins (Cal. 1964), 391 P.2d 828 (also cited by John and is discussed below).
 {¶ 33} Michael contends that all of these cases support his proposition that it is illegal to impose a restriction on previously purchased stocks. John claims that the above cases are distinguishable or support his position that a restriction may be placed on previously purchased stock. He cites Tu-Vu as being the case that is most directly on point.
 {¶ 34} In Tu-Vu, the issues presented was whether a corporation may enforce a bylaw restricting alienation of stock against a nonconsenting stockholder who acquired his stock prior to the enactment of the bylaw. The California Supreme Court held that it could. Id.
 {¶ 35} In Tu-Vu, the restriction is on the right to transfer stock. This restriction stated that Tu-Vu shares could be transferred to an outsider provided that the owner of the shares first offered them to the other shareholders and that, if the shareholders decline to purchase the stock, the owner offers it to the corporation, at the price and under the same terms as offered to the outsider.
 {¶ 36} The California Supreme Court stated that in order to be upheld, the restriction must be reasonable. It stated the restriction "must not constitute an unreasonably restrictive curtailment of the right of alienation and it must not otherwise unreasonably deprive the shareholder of `substantial right.'" Id. at 830 (internal citations omitted). It held that this such restriction was reasonable. It explained:
 {¶ 37} "Bylaws restricting transfer in closed corporations are frequently essential to a successful enterprise; they perform an important function in precluding unwanted intrusions by outsiders; they preserve the integrity of the functioning entity. Such bylaws are `necessary for the protection of the corporation and its stockholders against rivals in business or others who might purchase its shares for the purpose of acquiring information which might thereafter be used against the interests of the company * * *.'" Id. at 830 (internal citation omitted).
 {¶ 38} Examining all of these cases it is clear that none of them establish a strict rule that restrictions cannot be placed on previously acquired stock. Rather, the case law indicated that the validity of the restriction depends upon many factors, such as whether there is statutory law that does not permit restriction on previously acquired stock and whether the restriction is reasonable.
 {¶ 39} For example in BH Warehouse, one of the restrictions did not apply to BH because of a statutory enactment that stated restrictions were not binding to stock purchased prior to the enactment of the restriction. Likewise, as to the reasonableness factor, in Sandor Petroleum, the restriction was unreasonable because the corporation required the first option to purchase to the corporation at a price set by an appraiser. The Sandor Petroleum court implied that if the price had not been required to be set by an appraiser but rather by the open market then the restriction may not have been unreasonable. Similarly, in BH Warehouse, the 1966 restriction was unreasonable because it set the value of the stock at book value rather than at open market value. Yet, in Tu-Vu the restriction was not unreasonable because the right of first refusal was a true right of first refusal, i.e. the corporation could purchase the stock at the same price and under the same conditions as an outsider.
 {¶ 40} In the matter at hand, it is clear that Ohio has not established a bright line rule that restrictions cannot be placed on already acquired stock. There is no Ohio statutory law prohibiting placement of restrictions on already acquired stock. Furthermore, Ohio does recognize that restrictions on stock transfers are reasonable. In Shanks, the court stated that the right of first refusal was a reasonable restriction. Shanks,
73 N.E.2d at 99-100. The Shanks court then added that.
 {¶ 41} "`In the management of corporations few things are more apparent than the desire to keep the control of the same in the hands of people who are congenial to the enterprise and to those who manage its affairs. A quarreling directorate is a misfortune to the stockholders of any corporation.'" Id. at 94-95.
 {¶ 42} Thus, considering all the above, the denial of the preliminary injunction was not an abuse of discretion. Michael did not establish by clear and convincing evidence that he had a substantial likelihood of prevailing on the merits of his claim that a restriction could not be placed on his previously acquired stock. As the law is now, in Ohio, restrictions can be placed on previously acquired stock as long as the restriction is reasonable. That said, in the matter at hand, we cannot determine whether the May 20, 2004 resolution was reasonable. As previously explained the May 20, 2004 resolution was voided because it was not enacted in conformity with Ohio law and ACI's code of regulations. As such, any opinion we would express on that resolution would be advisory. Furthermore, while the parties during oral argument stated that a new resolution has been enacted, that resolution is not in the record before us. Thus, we also cannot make a determination as to its reasonableness.
 {¶ 43} Having discussed all the above, the issue of whether John can enact a restriction on the sale of Michael's ACI stock is tied in with Michael's claim that John breached the fiduciary duty by trying to and enacting such a resolution (May 20, 2004 resolution).
 {¶ 44} John, as majority shareholder, does owe a fiduciary duty to Michael, minority shareholder. However, John also owes a duty to ACI. The majority shareholder has a fiduciary duty "not to misuse his power by promoting his personal interests at the expense of corporate interests." Crosby v. Beam (1989),47 Ohio St.3d 105. Corporate interests in a closely held corporation is to keep outsiders or rivals from owning stock.
 {¶ 45} As explained above, Michael would not prevail on the merits of his claim because John was entitled to try to protect ACI by enacting a (valid reasonable) stock restriction preventing Michael from selling the stock to an outsider. As such, it can be concluded that the enactment of the May 20, 2004 resolution, though done the improper way, is not evidence of a breach of the fiduciary duty because there was a right to enact a valid reasonable restriction.
 {¶ 46} Furthermore, all evidence presented at the evidentiary hearing indicates that John treated Michael fairly. While they both were employed by the corporation they made the same salary and received the same bonuses. In fact, one time Michael received a bonus while John did not. Additionally, John testified that his enactment of the May 20, 2004 resolution was for the preservation and in the best interest of the corporation. (Tr. 213-214). He did not want to be unfair to Michael so he implemented the right of first refusal instead of an out and out prohibition against transfer. (Tr. 213).
 {¶ 47} Consequently, evidence supports the magistrate's finding that there was no breach of a fiduciary duty, i.e. that Michael did not show by clear and convincing evidence that he had a substantial likelihood of prevailing on the merits of his breach of fiduciary claim. Thus, the trial court did not abuse its discretion in adopting this ruling. Since, the first element for a preliminary injunction would fail, there is no need to address the remaining elements.
 {¶ 48} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.
[1] The trial court originally adopted the magistrate's decision on December 15, 2004. However, this decision was not a final order because it was a mere adoption of the magistrate's decision. See Harkins v. Wasiloski, 7th Dist. No. 00CA9, 2001-Ohio-3464.