[Civ. No. 25009. Second Dist., Div. One. Feb. 1, 1961.]

NEVELLA CASADY, Appellant, v. MODERN METAL SPINNING AND MANUFACTURING COMPANY (a Corporation) et al., Respondents.

William J. Curry, Bigelow & Curry and Ted Sullivan for Appellant.

Daniel W. Gage, Ernest R. Utley and David Lynn for Respondents.

LILLIE, J.—This is an appeal by plaintiff from a judgment refusing to decree specific performance of the executory provisions of a marital property settlement agreement.

On or about May 10, 1957, plaintiff, Nevella Casady, was awarded an interlocutory decree of divorce from defendant Casady. Prior to their separation, the Casadys owned as a portion of their community property 433⅓ shares of the capital stock of defendant corporation,[1] said shares standing of record in the name of Mr. Casady. Pursuant to pertinent addenda in a property settlement agreement, approved by the court, it was decreed that "Plaintiff shall have and she is awarded 216⅔ shares of stock of Modern Metal Spinning and Manufacturing Co., a corporation, as her sole and separate property"—the addenda also provided that defendant Casady would be entitled to a like number of shares of that company's stock. Both plaintiff and Casady were ordered to comply with all the terms of the decree. The corporation refused to issue a new certificate to Mrs. Casady for 216⅔ shares, and in October of 1959 the present action was commenced. While trial was had upon a supplemental complaint in six counts "For Injunction and Declaratory Relief," it seems agreed that the broad issue for determination is whether a court has the power to specifically enforce the executory provisions of a marital property settlement agreement which require the assent of parties not signatories thereto?

Certain agreed facts are set forth in a joint pretrial statement or are otherwise without dispute. In November of 1947, defendants Casady and Cimral and one Butcher purchased all of the stock of defendant corporation; thereafter each received 433⅓ shares of its capital stock. The stock certificates con-

[1] The corporation was not made a party defendant in the divorce proceeding.

tained the following restrictions relative to transfer: "This Certificate may only be transferred, assigned or hypothecated pursuant to Article VI, Section 6 of the By-laws of this Corporation." Section 6 provides as follows: "The shares of stock of the company shall not be transferrable or the subject of sale or pledge until first offered to the Company at the then value, as determined by a certified public accountant. If said offer is refused by the Company, then said stock shall be offered to the stockholders and if necessary prorated among them or such of them as desire to purchase. In each of the foregoing cases if such offer be made and refused by the Company, and the stockholders, the shares so offered shall be subject to sale, pledge or transfer, but not otherwise. The shares if any so purchased by the Company, shall be resold by it upon such terms as the Board of Directors may determine, but all remaining shareholders shall be first entitled to participate in the purchase in proration to the number of shares then held by them. In no case shall any share be assignable or transferrable until after offer to the Company and refusal by it, and subsequent offer and refusal by the stockholders to purchase as aforesaid." As with other by-laws, section 6 is made subject to amendment by written assent of two-thirds of the stockholders.

Shortly after the entry of the interlocutory decree of divorce, Casady delivered his certificate for 433⅓ shares to the defendant corporation with a request for transfer and the issuance of a new certificate to plaintiff for 216⅔ shares. Defendant corporation refused to do so as no compliance had been had with the pertinent provisions of article VI, section 6 of the by-laws just quoted; specifically, plaintiff did not offer to sell the shares awarded her by the divorce decree nor did she offer to have them valued or appraised by a certified public accountant.

The first count of the supplemental complaint prayed that Casady be compelled to deliver his certificate of stock to defendant corporation and to demand of the corporation that a new certificate for 216⅔ be issued to plaintiff; the trial court found that such delivery and request had been made by Casady. Counts two and three were either dismissed or abandoned. In the fourth cause of action, plaintiff asked the court to order Casady, as president or as a stockholder, to call a special meeting of the board of directors for the purpose of voting on deleting the restrictive provisions of section 6 and temporarily waiving such provisions so that she could become

a stockholder; also sought, in the same cause of action, was an order compelling an affirmative vote by Casady on both questions. The fifth and sixth causes of action sought to compel Casady to execute two documents, both of which had already been executed by Butcher, the third stockholder: In the fifth cause of action the document was an amendment to the by-laws which would delete the restrictive provisions; in the sixth cause of action, a written assent to the temporary waiving of the restrictive provision to permit plaintiff to become a stockholder of record.

Paragraph 16 of the Casady property settlement agreement provides that "the parties shall make, execute and deliver any and all instruments . . . as may be required for the purpose of giving the covenants, terms and conditions of this agreement full force and effect." Research, both by counsel and this court, discloses a surprising dearth of decisional law on the precise problem, namely, the specific enforceability of provisions in separation agreements other than those for support or alimony. It appears to be the general American rule that separation agreements other than those relating to alimony and support are enforceable by a decree of specific performance unless the provisions are violative of public policy or, as with other forms of equitable relief, specific performance is unwarranted by all of the facts and circumstances (anno., 44 A.L.R.2d 1091 et seq.). One such circumstance is where the agreement, by its nature, requires the assent of a third person not a party thereto.[2] ■ "Where the defendant's performance depends on the consent or approval of one not a party to the contract who is free to withhold his consent, specific performance of the contract will not be decreed where it does not appear that such consent or approval has been or can be obtained, or where it appears that such consent or approval is withheld or refused or has become impossible" (81 C.J.S., Specific Performance, § 16b); see also Williston on Contracts (rev. ed.) section 1422. ■ Accordingly, specific performance has been denied where the result of enforcement would be inequitable, or unjust as to an innocent third person—for example, where specific performance would result in compelling a defendant to violate a prior contract with such third person (81 C.J.S., Specific Performance,

[2] An exception arises when a party agrees to keep in full force and effect a policy of life insurance; willingness on the part of the insurers to write insurance must be presumed, assuming the contracting party was physically qualified and financially able to pay the premiums. (*Allen* v. *Allen*, 201 Okla. 1 [201 P.2d 786, 12 A.L.R.2d 977].)

§ 19). Section 368 of the Restatement, Contracts, is to the same general effect. The defense, of course, is impossibility of performance, codified by section 3390 of the Civil Code: ''The following obligations cannot be specifically enforced . . . 4. An agreement to perform an act which the party has not power lawfully to perform when required to do so.''

We proceed to the question as to whether respondents have brought themselves within the rules above stated. It seems clear that the pertinent restrictive provisions of section 6, *supra,* are not invalid (*Vannucci* v. *Pedrini,* 217 Cal. 138 [17 P.2d 706]; *Oakland Scavenger Co.* v. *Gandi,* 51 Cal.App. 2d 69 [124 P.2d 143]; Corp. Code, § 501, subd. (g)); indeed, appellant at the trial so stipulated. The rationale, which gives the corporation some control of its stockholder personnel and safeguards the membership from entry of unacceptable outsiders, is well stated in the Vannucci case, quoting from *Baumohl* v. *Goldstein,* 95 N.J.Eq. 597 [124 A. 118, 120] : ''As among the original incorporators there seems to be no reason in principle why they should not be permitted to retain the control of the corporation in which they have embarked their fortunes among themselves, or such of them as stand by the vessel, where no question of a *bona fide* purchaser without notice is involved. In this court, where the intent of the parties is the thing sought to be enforced, every effort should be made to hold men to agreements into which they have voluntarily entered, where the same are not obnoxious to any law or policy, and upon the strength of which others have changed their position or circumstances, or parted with a valuable consideration. It is their business and their money which is involved. It is by their efforts that success is attained, if attained at all. Surely, the public cannot be aggrieved, and individuals acting in accordance with equitable doctrines cannot be injured, because if they have no knowledge or notice of the fact they are not injured by it.'' (*Vannucci* v. *Pedrini, supra,* pp. 144-145.) In the case at bar it is not denied that the restrictions placed on the transfer of stock were in effect when said shares were acquired by Butcher and the respondents Casady and Cimral; too, it is admitted that no offer was ever made to the respondent corporation or respondent Cimral of the shares in question, and it is likewise admitted that no request was ever made by appellant to have said shares evaluated by a certified public accountant.

The by-laws of a corporation constitute a contract between the shareholders and the corporation (*Riverside Land Co.* v. *Jarvis,* 174 Cal. 316, 327 [163 P. 54]); the by-laws are also

a contract among the shareholders (*Saline Valley Salt Co.* v. *White*, 177 Cal. 341, 346 [170 P. 820]); accordingly, courts have often said that a first option provision, akin to that found in section 6, is " 'in the nature of a contract' between the corporation and its stockholders and, as such, binding upon them [citations]." (*Allen* v. *Biltmore Tissue Corp.*, 2 N.Y.2d 534 [141 N.E.2d 812, 815].) In *Bornstein* v. *District Grand Lodge, No. 4*, 2 Cal.App. 624 [84 P. 271], the court held that a beneficiary certificate is a contract and that the existing by-laws of a private corporation are a part of the contract. After declaring that the power to make by-laws is limited to those not inconsistent with the constitution and the law, the court stated: "[T]he power to alter has the same limit, so that no alteration could be made which would infringe a right already given and secured by the contract of the corporation. An alteration is a *pro tanto* repeal; but no private corporation can repeal a by-law so as to impair rights which have been given and become vested by virtue of the by-law afterward repealed . . . The alteration of a by-law is but the making of another upon the same matter. If the first must be reasonable and in accord with principles of law, so must that which alters it. If, then, the power is reserved to alter, amend or repeal, and that reservation enters into the contract, the power reserved is to pass reasonable by-laws agreeable to law, but a by-law which will disturb a vested right is not such . . . *A by-law, like a statute, will not be construed as intended to operate retrospectively unless express provision is found therefor in its terms; and if its language is such that by giving it a retrospective operation it would have the effect to annul or impair an existing obligation on the part of the corporation, such by-law will be held unreasonable and in contravention of existing laws* [citations] [emphasis added]" (pp. 627-628). We have emphasized the concluding statement, above quoted, because it concerns the pivotal point of this appeal; thus, assuming that Butcher and respondent Casady were required to execute the documents mentioned in the fifth and sixth causes of action and by such action the by-law was amended to give appellant the relief she demands, such action would relate to the issuance of *future* shares and could have no retroactive effect upon the shares already issued in the absence of agreement by all the shareholders. There is no evidence that Cimral would consent to such amendment, nor does the complaint so allege.

In *Bennett* v. *Hibernia Bank*, 47 Cal.2d 540, 552 [305 P.2d 20], the reasoning of the Bornstein case (which is cited) to

the particular problem at hand appears to have been followed; we say this because *State* v. *San Francisco Sav. & Loan Soc.,* 66 Cal.App. 53 [225 P. 309], is also cited. In the latter case the court makes mention of "the well-settled rule that where the language of a by-law of a corporation is such that, by giving it retrospective operation, it would have the effect of destroying or impairing an existing obligation or a substantive right, it will be held to be unreasonable or in defiance of existing laws" (pp. 57-58). The Bennett case also declares that the reasonableness of a by-law and the extent of the rights of the particular stockholder (member) involved are "matters which must be determined by the trier of fact in the light of all of the evidence" (pp. 552-553). Both Bennett and Bornstein were directed to the attention of the trial court which presumably weighed the principles therein declared against the claims appellant presently asserts. Her efforts to distinguish those cases on their facts are lacking in merit; for example, it is stated that "every case relied upon in Bornstein dealt with a nonstock membership insurance association, not a stock corporation organized for profit"; the rule in question may not thus be delimited. (8 Fletcher Cyc. Corp. [perm. ed.] § 4188; 18 C.J.S., Corporations, § 189(5).) Appellant also points to certain evidence which assertedly establishes the stock to be "unique," thus bringing her within the exception to the rule that a court will not ordinarily decree the transfer of personal property that has a market value (45 Cal.Jur.2d, Specific Performance, § 50); the difficulty with such argument lies in the fact that she is here seeking specific performance against respondent corporation and respondent Cimral neither of whom was a party to her contract with Casady.

Under the particular facts at bar, we are of the opinion that the trial court correctly concluded that specific performance should not be decreed. If rendered, it would be a vain decree, one which in truth and in fact respondents would find it impossible to obey. Decrees that would in the final result be nugatory should not be made. (4 Pomeroy's Eq. Jur. [5th ed.], § 1405b.)

Finally, complaint is made that the findings of fact and conclusions of law are not supported by the record. The point is without merit; certainly a reversal of the judgment on such ground is unwarranted.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.