# Richmond

## MONACAN HILLS, INCORPORATED, ET AL. v. WILLIAM H. PAGE, ET AL.

November 27, 1961.

Record No. 5296.

Present, All the Justices.

*James C. Roberts (David J. Mays; Tucker, Mays, Moore & Reed,* on brief), for the appellants.

*LeRoy R. Cohen, Jr. (Robert A. Cox, Jr.; Joel E. Kocen; Cohen, Cox & Kelly,* on brief), for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

William H. Page and others, hereinafter referred to as the complainants, filed their bill in equity against Monacan Hills, Incorporated, and its officers, hereinafter referred to as the defendants, seeking to compel the defendants to transfer to the names of the complainants on the books of the corporation one share of stock which the complainants alleged they had purchased from Thomas R. Eades, a former stockholder. The defendants filed an answer denying the right of the complainants to a transfer of the stock, on the ground that Eades had failed to comply with the restrictions binding upon the sale of the stock and embodied in the corporation's charter. After an *ore tenus* hearing the lower court entered a decree directing the transfer of the stock and from that decree the defendants have appealed.

In their assignments of error pressed before us the defendants contend that the lower court erred (1) in holding that Eades had complied with the restrictions on the sale of his stock, and (2) in admitting and considering evidence that certain directors of the corporation had represented to Eades and the complainants that the restrictions had been complied with.

Monacan Hills, Incorporated, was organized in 1954 to acquire and hold title to a tract of land in Goochland county, Virginia, for development and use as a country club. It had an authorized capital stock of

$100,000, divided into twenty shares of the par value of $5,000 each, all of which were issued for cash at par. The charter provided that no stockholder should own more than three shares of stock. There were less than twenty stockholders, holding from one to three shares each. Eades was the holder of one share. The charter carried restrictions on the sale and transfer of shares of stock, the pertinent portion of which is copied in the margin.[1]

Because of financial stress, Eades decided in the fall of 1958 to sell his stock. At his request Robert K. Coats, secretary of the corporation, sent to the members of the board of directors a written notice of a meeting to be held on December 4, 1958, to consider among other things the approval of a "potential purchaser" of Eades' stock. In accordance with this notice the meeting of the board, attended by all but a single director, was held on the date fixed.

There is a conflict in the evidence as to some of the details of what occurred at this meeting, but according to well-settled principles that conflict has been resolved by the lower court in favor of the complainants. It is clear from the evidence that the sale of Eades' stock was fully discussed and considered at this meeting. W. N. Corpening, a friend and client of Coats, who was willing to buy Eades' stock at $5,000, was suggested as a possible purchaser, but his name was rejected by the meeting.

---

[1] "No stockholder of this corporation, either directly or by any successor in interest, shall sell or otherwise transfer for valuable consideration all or any part of his shares of stock to any person, not then holding stock of this corporation, until such shares first shall have been offered for sale either to this corporation by written instrument addressed and delivered to the Board of Directors, or to a person who has been approved as a stockholder by all of the then directors of the corporation in a duly adopted resolution. Such offer shall be made at a price not greater than, and on terms equivalent to, that made the offeror by a *bona fide* bidder for such shares. Upon such offer for sale, those to whom the offer has been made may, not later than ninety days after the making of such offer, accept it by the delivery to the offeror of an executed instrument, a copy of which shall be delivered to the Secretary of the corporation, indicating such acceptance and directing the transfer of all or any part of the shares so offered to the stockholder or stockholders designated therein, in such proportions as they may elect, or to any person, whether or not a stockholder, designated in such instrument by the Board of Directors. Failure to execute and deliver such instrument within the ninety-day period shall constitute a rejection of the offer by the corporation or by the stockholders so failing, or by a person so designated, and the offeror thereafter shall be free to dispose as he shall see fit of those shares which the corporation or any other stockholder or designated person has not agreed to purchase. This provision shall not be deemed to restrict the transfer of stock of this corporation by bequest or descent and distribution, or a pledge or assignment of such stock as collateral to secure a loan or other hypothecation thereof, but a sale under a pledge or assignment shall be subject to this provision."

Eades testified that he verbally offered to sell his stock, then and there, to the corporation for $4,500, and that this offer was rejected when Coats, the secretary, advised the meeting that there were not sufficient funds in the treasury to make the purchase. The several members of the board were canvassed at the meeting and none was willing to buy at Eades' price of $4,500. Eades was then told that he should comply with the restrictions, submit to the corporation a written offer to sell, and wait for a period of ninety days for action thereon. Eades stated to the meeting that if he must wait ninety days the price for his stock would be $5,000. While the board was still in session Eades was told that he should "see Mr. Coats and he will tell you what needs to be done to comply" with the restrictions.

Immediately after the adjournment of the meeting Eades conferred with Coats and asked what he must do to comply with the restrictions. Thereupon Coats hastily wrote in his handwriting and had Eades sign this memorandum:

"12/4/58

"R. K. Coats, Secretary, M. H. Inc.
"I want to sell my one share of Monacan Hills stock to W. N. Corpening,
  "or (1)
      (2)

"Thomas R. Eades"

Eades further testified that Coats told him that this was a "sufficient" compliance with the restrictions. When Coats was asked, "Would it be fair to say, Mr. Coats, that you led Mr. Eades to believe that he had done everything that the meeting or the corporation required of him to do in order to start the 90-day period running?" his reply was, "I am positive that I so assured him," and explained why he had done so. Coats testified that he placed the memorandum among the other papers of the corporation which he had in his possession.

It is undisputed that from the time of the organization of the corporation until this meeting of the board, on December 4, 1958, Coats had been acting as its secretary and counsel. However, at this meeting Coats asked to be relieved of his duties as secretary and Carroll R. Minor was elected in his stead. When Minor obtained from Coats the corporate records the following January or February, he found therein the memorandum which Coats had drawn and Eades had signed.

Prior to that time it had not been brought to the attention of the other directors.

On March 10, 1959, the complainants purchased Eades' stock for $5,000 cash. Over the objection of the defendants, Page testified that before making the purchase he had been assured by Coats and two of the other directors, James W. Reynolds and Charles T. Hardwicke, Jr., that Eades "was free to sell." However, the transfer of the stock was refused by the officers of the corporation on the ground that the restrictions had not been complied with, and the present suit followed shortly thereafter.

Coats testified, and it is undisputed, that prior to the sale of Eades' stock the restrictions had not been enforced even as to sales to "non-stockholders." Moreover, it plainly appears from the evidence that the affairs of the corporation were otherwise operated in a most informal manner.

It is, of course, well settled that charter restrictions of the type here involved which are reasonable and not contrary to public policy are binding upon purchasers of the stock. Fletcher, Cyclopedia Corporations, Vol. 12 (1957 Revised), § 5453, p. 290 *ff.*; 13 Am. Jur., Corporations, §§ 333, 334, pp. 410, 411; Annotation, 61 A. L. R. 2d, p. 1337 *ff.* This is upon the principle that the charter is a contract between the corporation and the stockholders and between the stockholders themselves. Fletcher, Cyclopedia Corporations, Vol. 12 (1957 Revised), § 5453, p. 301; *Kemp* v. *Levinger,* 162 Va. 685, 692, 174 S. E. 820. It is also well settled that such restrictions are to be strictly construed. Fletcher, Cyclopedia Corporations, Vol. 12 (1957 Revised), § 5453, pp. 295, 296; 18 C. J. S., Corporations, § 391, p. 921.

Here the complainants do not challenge the validity or reasonableness of the restrictions. Their position is that they were substantially complied with by Eades before he sold the stock to them. Moreover, they say that the corporation is estopped to deny that the restrictions were not complied with. On the other hand, the defendants contend that the restrictions were not complied with, either literally or substantially.

The language of the restrictions is involved and cumbersome. In substance it requires that a stockholder desiring to sell may offer his stock to the corporation by a written instrument addressed and delivered to the board of directors. In the alternative, he may offer the stock to a person who has been approved as a stockholder by a resolution of the board. There is no requirement that this latter offer be in

writing. These offers must be at a price not greater than that offered to the stockholder by a *bona fide* bidder. If neither offer is accepted within ninety days the stockholder is free to sell to anyone he may desire.

Here there was no written offer made by Eades to sell to the corporation. But according to the evidence, accepted by the lower court, Eades verbally offered to sell his stock to the corporation or to any stockholder present at the meeting for $4,500 cash, or for $5,000 at the end of ninety days. Through Coats he had had an offer of $5,000 from Corpening. While crudely drawn, the effect of the memorandum which Coats prepared and Eades signed, in view of what had transpired at the meeting, was to put the corporation on notice that if Eades' verbal offer to sell at $5,000 was not accepted within ninety days by the corporation, or an individual approved by the board, he would sell to Corpening who had been discussed at the meeting as a possible stockholder. We agree with the lower court that this amounted to a substantial compliance with the restrictions and left Eades free to sell to the complainants at the end of the ninety-day period.

■ Moreover, under the circumstances related, the corporation is clearly estopped to take the position that the restrictions were not complied with. As has been said, Eades was told by the board of directors to consult Coats who would tell him how to comply with the restrictions. Eades followed this direction. Immediately after the meeting he consulted Coats and asked what steps he must take. Coats, who was secretary of and counsel for the corporation, wrote out the memorandum, had Eades sign it, and assured him that this was a sufficient compliance with the restrictions in order to start the running of the ninety-day period. Again, Coats told Page and his associates before they purchased the stock that Eades had complied with the restrictions and was free to sell.

It will be observed that in this transaction Coats was acting as the agent of the corporation. Not only was he its counsel, with implied authority to handle the matter, but he was in effect directed at the meeting of the board to do so. If the restrictions were not literally complied with, as the defendants claim, this was due to his fault and the corporation should not be permitted to take advantage of his mistake. Nor should it be permitted in equity to repudiate the statements made by its agent, Coats, to Eades and the complainants that the restrictions had been complied with.

■ Complaint is made that the lower court erred in admitting in

evidence the statements of Coats and the other directors, Reynolds and Hardwicke, that Eades had complied with the restrictions and was free to sell his stock. Clearly the statements of Coats were admissible for they were made in respect to matters within the scope of his authority as agent for the corporation. 20 Am. Jur., Evidence, § 601, p. 515; 31 C. J. S., Evidence, § 354, pp. 1128, 1129.

On the other hand, we agree with the defendants that the statements of the directors, Reynolds and Hardwicke, were not admissible. As is said in Fletcher, Cyclopedia Corporations, Vol. 2 (1954 Revised), § 741, pp. 1026-1028: "[T]he directors of a corporation have authority to bind it only when they act collectively as a board. Individual directors are not its agents, and it is well settled, therefore, that declarations and admissions of individual directors when not acting as a board are not binding on the corporation nor admissible as evidence against it, unless they were acting at the time as its authorized agents and within the scope of their authority. 'Curbstone admissions or declarations' of an individual director have not the effect of binding the corporation in the absence of evidence that authority to make such declarations was duly conferred." To the same effect see *Griffith* v. *Electrolux Corporation*, 176 Va. 378, 399, 11 S. E. 2d 644, 653.

It clearly appears from what has been said that regardless of the statements of the directors, Reynolds and Hardwicke, there is ample evidence to support the decree of the lower court. Accordingly, it is

*Affirmed.*