*Decision will be entered under Rule 50.*

SUPERIOR BEVERAGE COMPANY OF MARYSVILLE, INC., ET. AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6725–70—6727–70. Filed August 28, 1972.

*Bayley Kohlmeier*, for the petitioners.
*Lawrence G. Becker*, for the respondent.

---

[1] Cases of the following petitioners are consolidated herewith: Superior Beverage Co. of Redding and Red Bluff, Inc., docket No. 6726–70 ; and Superior Beverage Co. of Chico, Inc., docket No. 6727–70.

920

922

OPINION

RAUM, *Judge:* Section 1561(a), I.R.C. 1954,[4] provides that if a group of corporations constitutes a "controlled group of corporations" on a December 31, the component members of such group are entitled to only one surtax exemption of $25,000 to be apportioned among them for their respective taxable years which include such December 31. The Commissioner contends that petitioners constituted a "controlled group of corporations" in accordance with section 1563

---

[4] In respect of the years at issue herein, sec. 1561(a) provides as follows :

SEC. 1561. SURTAX EXEMPTIONS IN CASE OF CERTAIN CONTROLLED COR-PORATIONS.

(a) GENERAL RULE.—If a corporation is a component member of a controlled group of corporations on a December 31, then for purposes of this subtitle the surtax exemption of such corporation for the taxable year which includes such December 31 shall be an amount equal to—

(1) $25,000 divided by the number of corporations which are component members of such group on such December 31, or

(2) if all such component members consent (at such time and in such manner as the Secretary or his delegate shall by regulations prescribe) to an apportionment plan, such portion of $25,000 as is apportioned to such member in accordance with such plan.

The sum of the amounts apportioned under paragraph (2) among the component members of any controlled group shall not exceed $25,000.

(a) (2),[5] which in substance defines that term to include a "brother-sister controlled group," and that definition in turn is applicable here by its terms if A. E. Huckins owned, directly or constructively, at least 80 percent of the outstanding stock of all three petitioners on December 31 of 1966, 1967, and 1968. In the absence of petitioners' consent to a plan for an uneven apportionment of such exemption, the Commissioner has allocated one-third of $25,000 to each petitioner for each of the years at issue. The petitioners object to the Commissioner's determination that A. E. Huckins owned more than 80 percent of each company's stock. We think that his determination must be approved.

Section 1563 (e) [6] prescribes a set of attribution rules for determining whether one person possesses the requisite 80-percent ownership in several corporations which qualifies them as component members

---

[5] As it applied to the years in issue, prior to its amendment by section 401(c) of the Tax Reform Act of 1969, 83 Stat. 487, sec. 1563(a) (2) read as follows:

SEC. 1563. DEFINITIONS AND SPECIAL RULES.

(a) CONTROLLED GROUP OF CORPORATIONS.—For purposes of this part, the term "controlled group of corporations" means any group of—

\* \* \* \* \* \* \*

(2) BROTHER-SISTER CONTROLLED GROUP.—Two or more corporations if stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations is owned (within the meaning of subsection (d) (2)) by one person who is an individual, estate, or trust.

[6] SEC. 1563. DEFINITIONS AND SPECIAL RULES.

(e) CONSTRUCTIVE OWNERSHIP.—

\* \* \* \* \* \* \*

(4) ATTRIBUTION FROM CORPORATIONS.—Stock owned, directly or indirectly, by or for a corporation shall be considered as owned by any person who owns (within the meaning of subsection (d)) 5 percent or more in value of its stock in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation.

(5) SPOUSE.—An individual shall be considered as owning stock in a corporation owned, directly or indirectly, by or for his spouse \* \* \*, except in the case of a corporation with respect to which each of the following conditions is satisfied for its taxable year—

(A) The individual does not, at any time during such taxable year, own directly any stock in such corporation;

(B) The individual is not a director or employee and does not participate in the management of such corporation at any time during such taxable year;

(C) Not more than 50 percent of such corporation's gross income for such taxable year was derived from royalties, rents, dividends, interest, and annuities; and

(D) Such stock in such corporation is not, at any time during such taxable year, subject to conditions which substantially restrict or limit the spouse's right to dispose of such stock and which run in favor of the individual or his children who have not attained the age of 21 years.

(6) CHILDREN, GRANDCHILDREN, PARENTS, AND GRANDPARENTS.—

\* \* \* \* \* \* \*

(B) ADULT CHILDREN AND GRANDCHILDREN.—An individual who owns (within the meaning of subsection (d) (2), but without regard to this subparagraph) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock in a corporation shall be considered as owning the stock in such corporation owned, directly or indirectly, by or for his parents, grandparents, grandchildren, and children who have attained the age of 21 years.

of a brother-sister controlled group. These rules are made applicable to section 1563 (a) (2) by section 1563 (d) (2).[7] There is no dispute that A. E. Huckins is deemed to have owned his wife's interest in the couple's commonly held stock in Redding and Chico (2,070 and 2,750 shares, respectively), pursuant to section 1563 (e) (5). In addition, under sections 1563 (e) (6) (B) and 1563 (f) (2) (A),[8] Huckins constructively owned the shares belonging to his adult children, Diann Huckins Allen and D. Pete Huckins, which amounted to 300 shares of Redding Co. stock and 400 shares of Chico Co. stock. Thus, A. E. Huckins is treated as owning at least 79 percent $((2,070+300)/3,000)$ and 78.75 percent $((2,750+400)/4,000)$ of the total number of outstanding shares of the Redding and Chico companies, respectively, on December 31 of 1966, 1967, and 1968. Since these companies each owned 50 percent of the outstanding stock of the Marysville Co., the ownership of at least 78.88 percent $(\frac{1}{2} \times (79 \text{ percent} + 78.75 \text{ percent}))$ of that company's stock is also attributed to A. E. Huckins under section 1563 (e) (4). This much of the computation is not in dispute.

However, section 1563 (c) (1) (C)[9] provides in substance that, for the purpose of determining whether several corporations constitute a controlled group, certain stock is to be treated as "excluded stock" and not counted in computing a common owner's percentage of ownership in such corporations. Prior to its amendment by section 401 (d) (2) of the Tax Reform Act of 1969, 83 Stat. 487, section 1563 (c) (2) (B) provided as follows in respect of such excluded stock:

SEC. 1563. DEFINITIONS AND SPECIAL RULES.
    (c) CERTAIN STOCK EXCLUDED.—

        \*        \*        \*        \*        \*        \*        \*

---

[7] SEC. 1563. DEFINITIONS AND SPECIAL RULES.
   (d) RULES FOR DETERMINING STOCK OWNERSHIP.—
    \*    \*    \*    \*    \*    \*
     (2) BROTHER-SISTER CONTROLLED GROUP.—For purposes of determining whether a corporation is a member of a brother-sister controlled group of corporations (within the meaning of subsection (a)(2)), stock owned by a person who is an individual, estate, or trust means—
      (A) stock owned directly by such person, and
      (B) stock owned with the application of subsection (e).
[8] SEC. 1563. DEFINITIONS AND SPECIAL RULES.
   (f) OTHER DEFINITIONS AND RULES.—
    \*    \*    \*    \*    \*    \*    \*
     (2) OPERATING RULES.—
      (A) IN GENERAL.—\* \* \* stock constructively owned by a person by reason of the application of paragraph (1), (2), (3), (4), (5), or (6) of subsection (e) shall, for purposes of applying such paragraphs, be treated as actually owned by such person.
[9] SEC. 1563. DEFINITIONS AND SPECIAL RULES.
   (c) CERTAIN STOCK EXCLUDED.—
     (1) GENERAL RULE.—For purposes of this part, the term "stock" does not include—
    \*    \*    \*    \*    \*    \*    \*
      (C) stock which is treated as "excluded stock" under paragraph (2).

(2) Stock Treated as "Excluded Stock".—

\* \* \* \* \* \* \*

(B) Brother-sister controlled group.—For purposes of subsection (a) (2), if a person who is an individual, estate, or trust (referred to in this paragraph as "common owner") owns (within the meaning of subsection (d)(2)), 50 percent or more of the total combined voting power of all classes of stock entitled to vote or 50 percent or more of the total value of shares of all classes of stock in a corporation, the following stock of such corporation shall be treated as excluded stock—

\* \* \* \* \* \* \*

(ii) stock in such corporation owned (within the meaning of subsection (d)(2)) by an employee of the corporation if such stock is subject to conditions which run in favor of such common owner (or such corporation) and which substantially restrict or limit the employee's right (or if the employee constructively owns such stock, the direct owner's right) to dispose of such stock. If a condition which limits or restricts the employee's right (or the direct owner's right) to dispose of such stock also applies to the stock held by the common owner pursuant to a bona fide reciprocal stock purchase arrangement, such condition shall not be treated as one which restricts or limits the employee's right to dispose of such stock \* \* \*.

The Commissioner contends that stock of the Redding and Chico companies which was owned by employees of those companies was "subject to conditions which [ran] in favor of [the respective corporations] and which substantially restrict[ed] or limit[ed] the employee[s'] right \* \* \* to dispose of such stock," by reason of article VI, section 3, of the bylaws, which was reproduced on the stock certificates and which in substance prohibited the sale of the stock without first offering it to the company and thereafter to the other shareholders in the event that the company did not exercise its option to purchase. If the Commissioner is correct in his contention that the minority employee-owned shares (220 in Redding and 750 in Chico) must be excluded, then it is undisputed that A. E. Huckins' percentage interests in all three corporations exceeded 80 percent.[10] The petitioners argue, however, that these employee-owned shares are not to be treated as "excluded" under section 1563(c)(2)(B)(ii). They rely upon either of two grounds: (1) That the right of first refusal did not substantially restrict or limit the employees' rights to dispose of their stock;

---

[10] The computations are as follows:

$$Redding: \frac{2,070+300}{3,000-220}=85.25 \text{ percent}$$

$$Chico: \frac{2,750+400}{4,000-750}=96.92 \text{ percent}$$

$$Marysville: \frac{1}{2}\times(85.25+96.92)=91.09 \text{ percent}$$

and (2) that the right of first refusal was "a bona fide reciprocal stock purchase arrangement" within the meaning of the second sentence of section 1563(c)(2)(B)(ii), which precluded the classification of such stock as excluded stock. We think that neither of these positions is sound.

1. Petitioners' first contention calls for only brief comment. The same argument was made and rejected in *Barton Naphtha Co.*, 56 T.C. 107. Petitioners have not been able to offer any satisfactory distinction between the present case and *Barton Naphtha;* we follow it here. See also sec. 1.1563–2(b)(2)(iii), Income Tax Regs.[11] (applied to brother-sister groups through sec. 1.1563–2(b)(4)(ii), Income Tax Regs.) ; Rev. Rul. 70–470, 1970–2 C.B. 182. We hold that the right of first refusal that attached to the employees' stock in this case was one that substantially restricted or limited their right to dispose of the stock within the meaning of section 1563(c)(2)(B)(ii).

2. Nor do we agree with petitioners' second contention that the employees' stock may not be treated as "excluded stock" by reason of a purported "bona fide reciprocal stock purchase arrangement" under which the restrictions affecting the employees' stock were equally applicable to the stock of the common owner, A. E. Huckins. To be sure, the same restrictions upon transfers of stock which were imposed by the bylaws in respect of the minority employee-owned stock were in form equally applicable to the stock owned by Huckins. And if such restrictions were irrevocably binding upon him, we would sustain petitioners' position. But the Commissioner argues that Huckins, as the controlling stockholder,[12] had the power under California law to eliminate the restrictions from the bylaws at will, thereby removing any impediment against transfer by him whenever he might desire to dispose of his stock. If Huckins in fact had such power, then the "reciprocal" aspect of the arrangement becomes illusory, and we would conclude that there was not any "bona fide reciprocal stock purchase arrangement" within the meaning of the statute. As we view California law, we think that the Commissioner is correct.

---

[11] These regulations provide that a condition whereby the corporation "is given a right of first refusal with respect to any stock * * * offered by an employee for sale is a condition which substantially restricts or limits the employee's right to dispose of such stock." In accord with established law these regulations are valid unless plainly inconsistent with the statute. See *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501; *Bingler* v. *Johnson*, 394 U.S. 741, 749–750; *Regal, Inc.*, 53 T.C. 261, 263, affirmed 435 F. 2d 922 (C.A. 2). No such inconsistency has been shown here. To the contrary, the legislative history of the statute clearly demonstrates that the House Ways and Means Committee regarded a "right of first refusal" as "[a]n example of a condition which substantially restricts or limits an employee's right to dispose of his stock." H. Rept. No. 749, 88th Cong., 1st Sess., p. A204.

[12] He and his wife owned 2,070 out of the 3,000 outstanding shares of Redding and 2,750 out of the 4,000 outstanding shares of Chico. Such shares were held as community property, and Huckins possessed the power to vote them, pursuant to sec. 172 of the California Civil Code (now codified in Cal. Civ. Code sec. 5125 (1970)), which provides that "the husband has the management and control of the community personal property."

Section 500 of the California Corporations Code (1947) provides that bylaws may be "amended, or repealed by the vote or the written assent of shareholders entitled to exercise a majority of the voting power of the corporation." [13] Thus, under these provisions, a stockholder with voting control has it within his power unilaterally to amend the bylaws so as to impose new restrictions against transfer where none were previously in effect, or by parity of reasoning, to remove existing restrictions from the bylaws. This, we think, is clearly the law of California,[14] as set forth by its Supreme Court in *Tu-Vu Drive-In Corp.* v. *Ashkins*, 61 Cal. 2d 283, 391 P. 2d 828, 38 Cal. Rptr. 348.

In the *Tu-Vu* case, the owner of 54 percent of a corporation's stock effected a change in the bylaws, requiring for the first time that the corporation's shares could be transferred to an outsider only if the owner first offered them to the other shareholders or the corporation. In an action to enforce these new restrictions against a nonconsenting stockholder owning 39 percent of the outstanding stock, the Supreme Court of California held the amended bylaws valid. In response to the argument that the amendment to the bylaws impaired the minority stockholder's "contract" with the corporation, the court held that insofar as the corporate bylaws constituted a contract between the stockholders and the corporation, such contract was subject to the legislature's power to regulate the rights of corporate stockholders and was therefore subject to the corporation's power to amend its bylaws pursuant to statutory authority. Therefore, even if petitioners' bylaws were also regarded as an agreement between the stockholders inter sese, their agreement must likewise have been subject to the relevant provisions of the California Corporations Code, which did not require all stockholders to consent to the repeal or amendment of a bylaw. See also *Wilson* v. *Cherokee Drift Mining Co.*, 14 Cal. 2d 56, 58, 92 P. 2d 802, 803; *Silva* v. *Coastal Plywood & Timber Co.*, 124 Cal. App. 2d 276, 278, 268 P. 2d 510, 512 (approving a nonunanimous repeal of a bylaw which restricted the transfer of shares).[15]

---

[13] Pursuant to that section bylaws may also be amended or repealed by the board of directors, but its power in this respect is made explicitly "[s]ubject to the right of the shareholders to * * * amend, or repeal" the bylaws.

[14] Several cases cited by petitioners suggest that the law may be otherwise in one or two other States.

[15] *Casady* v. *Modern Metal Spinning & Manufacturing Co.*, 188 Cal. App. 2d 728, 10 Cal. Rptr. 790, also relied upon by petitioners, entirely failed to consider the possibility that the shareholders' contract arising from the bylaws incorporated the amendatory provisions of the statute. Moreover, the court's description of the bylaws as a contract between the stockholders inter sese, was characterized as dictum and questioned in *Scott* v. *Lee*, 208 Cal. App. 2d 12, 14–15, 24 Cal. Rptr. 824, 826. Finally, the *Casady* case was heavily relied on in the appellate court's opinion in *Tu-Vu Drive-In* case, 34 Cal. Rptr. 622, 623 (Dist. Ct. App. 4th Dist.), which was reversed by the California Supreme Court.

Thus, if a majority stockholder could unilaterally amend the bylaws so as to impose restrictions upon the disposition of the corporation's stock, it would seem that it would similarly be within his power to remove existing restrictions of a like nature—ordinarily, a less drastic action. We are unable to discern any critical difference between the two situations, and, in our judgment, Huckins had the power to modify the bylaws at will so as to remove the restrictions against disposition.[16] While it is undoubtedly true that a majority stockholder may be under a fiduciary duty (see *Jones* v. *H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 460 P. 2d 464, 81 Cal. Rptr. 592; *Pepper* v. *Litton*, 308 U.S. 295), the elimination of restrictions against transfer would be no more a violation of that duty than the imposition of such restrictions, which were approved by the Supreme Court of California in *Tu-Vu*.

In view of our conclusion that Huckins had the power to remove the restrictions at will,[17] it is a matter of no moment that there were undoubtedly valid business reasons for imposing such restrictions in the first instance, as shown by the testimony of Donald Huckins and that of A. E. Huckins himself. The point is that the restrictions were applicable to the minority stockholder-employees, but that A. E. Huckins could remove them at will in the event that he wished to dispose of his stock. In the circumstances, the "bona fide reciprocal" character of the arrangement becomes illusory.

We hold that petitioners' employee-owned stock, apart from that held by A. E. Huckins, must be treated as "excluded stock" under section 1563(c)(2)(B)(ii) and that Huckins' extent of control over each of the petitioners therefore exceeded 80 percent. Cf. Rev. Rul. 70–252, 1970–1 C.B. 186. As a component member of a brother-sister

---

[16] The fact that the applicable provisions of the bylaws were quoted in the certificates adds nothing to petitioners' case. Such endorsements merely operated to bring the certificates into conformity with the disclosure requirements of secs. 2403(c) and 2404 of the California Corporations Code, and if the bylaws were modified, there would not appear to be any difficulty in obtaining the California corporations commissioner's permission to replace the original stock certificates with certificates not containing the restrictive legend. Cf. *Tu-Vu Drive-In Corp.* v. *Ashkins*, 61 Cal. 2d 283, 285, 391 P. 2d 828, 829, 38 Cal. Rptr. 348, 349.

[17] To be sure, as majority stockholder, he could also have obtained a modification of the bylaws in another manner, namely, by selecting a sufficient number of compliant directors who could be counted upon to amend the bylaws in accordance with his wishes. We need not decide whether this ground alone would be sufficient to support our conclusion in the light of *United States* v. *Byrum*, 408 U.S. 125, for Huckins had the right as stockholder to amend the bylaws without any participation by the directors—a right which he could exercise in his favor under California law pursuant to the rationale of the *Tu-Vu* case. Moreover, even if that right was subject to some restriction based upon a fiduciary obligation, it is obvious that he certainly could exercise his right at least within a broad range as exemplified by *Tu-Vu*, whereas the minority stockholders had no such right at all. Accordingly, there is here absent the "reciprocal stock purchase arrangement" required by the statute. No such provisions were involved in *Byrum*.

controlled group of corporations, each petitioner was entitled under section 1561(a) to only one-third of a full $25,000 surtax exemption for each of the years 1966 and 1967. Pursuant to their timely filed election under section 1562(a)(1),[18] they are entitled to multiple surtax exemptions for the year 1968 but are liable for the additional tax imposed by section 1562(b)(1).[19]

*Decisions will be entered under Rule 50.*

---

[18] SEC. 1562. PRIVILEGE OF GROUPS TO ELECT MULTIPLE SURTAX EXEMPTIONS.
   (a) ELECTION OF MULTIPLE SURTAX EXEMPTIONS.—
       (1) IN GENERAL.—A controlled group of corporations shall (subject to the provisions of this section) have the privilege of electing to have each of its component members make its returns without regard to section 1561. Such election shall be made with respect to a specified December 31 and shall be valid only if—
           (A) each corporation which is a component member of such group on such December 31, and
           (B) each other corporation which is a component member of such group on any succeeding December 31 before the day on which the election is filed,
       consents to such election.
[19] SEC. 1562. PRIVILEGE OF GROUPS TO ELECT MULTIPLE SURTAX EXEMPTIONS.
   (b) ADDITIONAL TAX IMPOSED.—
       (1) GENERAL RULE.—If an election under subsection (a)(1) by a controlled group of corporations is effective with respect to the taxable year of a corporation, there is hereby imposed for such taxable year on the taxable income of such corporation a tax equal to 6 percent of so much of such corporation's taxable income for such taxable year as does not exceed the amount of such corporation's surtax exemption for such taxable year. * * *