**SUPERIOR BEVERAGE COMPANY OF MARYSVILLE, INC., Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**SUPERIOR BEVERAGE COMPANY OF REDDING AND RED BLUFF, INC., Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**SUPERIOR BEVERAGE COMPANY OF CHICO, INC., Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**Nos. 73–1309 to 73–1311.**

United States Court of Appeals, Ninth Circuit.

Oct. 20, 1975.

---

Bayley Kohlmeier (argued), San Francisco, Cal., for petitioner-appellant.

Richard Farber, Atty. (argued), U. S. Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee.

## OPINION

Before CHAMBERS and MERRILL, Circuit Judges, and PALMIERI,* District Judge.

CHAMBERS, Circuit Judge:

This is an appeal from a decision of the Tax Court reported with a detailed factual description at 58 T.C. 918 (1972) assessing deficiencies in the income tax of each of the appellant corporations for the years 1966, 1967, and 1968. We reverse.

As a general rule under 26 U.S.C. § 11(d), every corporation is entitled to a yearly surtax exemption of $25,000. If a company is. a member of a "controlled group of corporations," it is entitled to only its proportionate share of a single $25,000 exemption. 26 U.S.C. § 1561(a). Under the statute applicable to the years in question, a controlled group of corporations included, *inter alia*, two or more corporations if any individual ("common owner") owned "stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations." 26 U.S.C. § 1563(a)(2). Since each of the taxpayers had only one class of stock outstanding and each share of stock was entitled to one vote, this definition translates for purposes of this case into an ownership requirement of at least 80 percent of the issued and outstanding stock of each corporation. For the purpose of making the percentage determination, several adjustments are required. First, the term "ownership" is subject to attribution rules which, as applies in this case, attribute to the common owner shares held by certain related persons. 26 U.S.C. § 1563(d)(2). Second, the "stock" of a corporation in this calculation does not include shares owned by an employee if the shares are subject to a restriction in favor of the corporation or the common owner which substantially restricts the employee's right to dispose of the stock—unless the restriction is part of a bona fide reciprocal stock purchase agreement which restricts the common owner as well as the employee. 26 U.S.C. § 1563(c)(2)(B)(ii).

The stock of each of the three corporations involved in this action was subject to a restriction granting to the company a ten-day option to purchase any shareholder's stock before it could be sold to an outsider. If the company failed to exercise its option then the other shareholders would have a ten-day option to purchase. The options were exercisable

* Honorable Edmund L. Palmieri, United States District Judge for the Southern District of New York, sitting by designation.

at the price proposed for sale to the outsider. Counting all issued and outstanding shares, A. E. Huckins owned either by attribution under 26 U.S.C. § 1563(e) or directly, 78.875% of the shares of Superior Beverage Co. of Marysville, Inc., 79% of the shares of Superior Beverage Co. of Redding and Red Bluff, Inc., and 78.75% of the shares of Superior Beverage Co. of Chico, Inc.

Each of these corporations claimed a full $25,000 surtax exemption for the years in question. The Commissioner determined, however, that they were a "controlled group of corporations" and hence entitled to only one exemption among the three of them. He based his determination on the fact that if the portion of shares held by the employees in each of the three firms was not included in the total "stock" figure for § 1563(a)(2) purposes, Huckins would own (or be treated as owning) more than 80% of the stock of each corporation. The Commissioner decided that the employees' stock should not be included for § 1563(a)(2) purposes because the first refusal restriction on the shares was a substantial restriction upon alienation by the employees which was not part of a bona fide reciprocal stock purchase agreement that bound the common owner. The Tax Court sustained this determination.

The appellants raise two alleged errors in the decision of the Tax Court not to include the employees' stock. First, they contend that the first refusal option did not substantially impair the right to alienate the stock. We agree with the Commissioner and the Tax Court that this was a substantial restriction. While the California courts have held first refusal restrictions not to be so substantial a restraint on alienation as to be invalid *per se*, the issue here is whether such a first refusal requirement was within the meaning of "substantially restrict" as employed by Congress when drafting the statute. Congress did not define the term "substantially restrict" within the statute itself. However, the House Report on the Bill which included § 1563(c)(2), includes as an example of a substantial restriction a buy-sell agreement giving the other shareholder an option to purchase, at the then current market price, which he may exercise before any stock can be sold to an outsider. Similarly the Treasury Department has adopted a regulation that takes the position that a right of first refusal is a substantial restriction without regard to any term fixing price. Treas.Reg. § 1.1563–2(b)(2)(iii). The purpose of stock exclusion under § 1563 is to prevent shares from being counted as independent for the purposes of determining if the common owner has such control over the companies so as to require limitation of their exemptions, while the owner retains a real degree of control over the shares in question. The first refusal restriction gives the common owner a right to keep outsiders from buying the employees' shares. This is a retention of real control over the stock in question. We therefore find that the treasury regulation is consistent with the intent of the statute and that the Tax Court was correct in holding the right of first refusal involved here to be a substantial restriction.

Appellants also contend that even if the restriction is substantial it does not prevent the employees' stock from being considered for § 1563(a)(2) purposes because the restriction is a bona fide reciprocal stock purchase agreement that restricts the common owner as well as the employees. The Tax Court rejected this characterization of the first refusal restriction because it felt that the restriction was not really reciprocal.[1] The Tax Court held that since under California law, Huckins, as majority shareholder, could unilaterally amend the bylaw restricting transfer at any time, could not really bind him. We reject this view and hold that the restriction here was a

1. The bona fides of the agreement has not been controverted. The record shows that it

was adopted prior to enactment of the statute in question for sound business reasons.

reciprocal one which bound Huckins as well as the employees. First, it is not clear under California law that Huckins could under all circumstances unilaterally remove the transfer restriction. Under California law, a majority shareholder has a fiduciary duty to the minority shareholders not to use his power to unfairly injure them or the company. *Jones v. H. F. Ahmanson & Co.*, 1 Cal.3d 93, 460 P.2d 464, 81 Cal.Rptr. 592 (1969). The Supreme Court of California in *Tu-Vu Drive-in Corp. v. Ashkins*, 61 Cal.2d 283, 391 P.2d 828, 38 Cal.Rptr. 348 (1964), held that a majority shareholder could unilaterally amend the bylaws to add one restricting the transfer of the outstanding stock of the corporation. The court was careful to qualify this unilateral right to amend bylaws to situations where the amendment is for the benefit of the entire corporation and its shareholders. Thus, Huckins could not unilaterally amend the bylaws in any way unless for the benefit of the corporation and other shareholders. Further, there is an opinion of the Court of Appeal of California, prior to *Tu-Vu,* holding that the majority shareholder could not amend the bylaws to remove a restriction on transfer because these restrictions were vested rights of the other shareholders. *Casady v. Modern Metal Spinning & Manufacturing Co.*, 188 Cal. App.2d 728, 10 Cal.Rptr. 790 (1961). The Tax Court felt that *Tu-Vu* overruled *Casady* and allowed the majority shareholder to amend bylaws to remove as well as add restrictions on transfer. We need not decide this issue of California law. We merely note that any power Huckins had to amend the bylaws had to be exercised for the benefit of all of the shareholders. His power was restricted in this regard and that is sufficient to make the restriction reciprocal. Second, leaving aside the question of the extent of Huckins' right to amend under California law, we do not feel that the mere existence of a power to amend renders the restriction nonreciprocal under the standards of § 1563(c)(2). The question of reciprocity of restriction is whether the common owner is restricted to the same extent as the employee shareholders. Here Huckins must restrict his own stock if he intends to restrict the stock of his employees. The duty of fairness of the majority to the minority shareholder would encompass a right of the minority shareholder not to have the majority shareholder remove the restrictions on the sale of his own stock while leaving restrictions on the minority shareholder's stock. To the extent, therefore, that Huckins wishes to retain restrictions on the stock of his employees, he must retain the restrictions on his own stock. The restrictions are reciprocal and apply as fully against the common owner as they do against the employees. Therefore, the shares of the employees are to be included in the "stock" for the purposes of the § 1563(a)(2) determination. When the employee-held shares are so included, Mr. Huckins owns less than 80% of each of the three companies. Thus, the companies do not fit into the definition of a "controlled group of corporations" but are each entitled to a full surtax exemption for the years in question.

Reversed for proceedings consistent herewith.