359 S.E.2d 618

**KANAWHA–ROANE LANDS, INC.**

**v.**

**S. Franklin BURFORD, Administrator of the Estate of S.S. Burford, Deceased.**

**No. 17084.**

Supreme Court of Appeals of West Virginia.

Decided July 22, 1987.

Henry R. Glass, III, Lovett, Vaughan & Cooper, Charleston, for appellant.

Stephen M. Mathias, Hoy G. Shingleton, Jr., Rice, Douglas & Shingleton, Martinsburg, for appellee.

MILLER, Justice:

This appeal by the administrator of the estate of S.S. Burford involves the validity of a by-law giving Kanawha-Roane Lands, Inc., a first option to purchase stock of a deceased stockholder at the price the stock was originally purchased. We believe the trial court correctly determined the by-law was valid and specifically enforceable and properly granted summary judgment in favor of the corporation, and we, therefore, affirm the judgment of the circuit court.

Kanawha-Roane Lands, Inc., instituted this action in the Circuit Court of Kanawha County in 1981 seeking a declaratory judgment that its corporate by-law granting a right to repurchase on the death of a shareholder was valid and asking for specific

performance. The corporation attached a copy of the pertinent by-law [1] as an exhibit to the complaint. S.S. Burford had owned six shares of its stock upon his death in September, 1974, and S. Franklin Burford was appointed administrator of his estate. On or about September 27, 1974, the board of directors of the corporation exercised the right to repurchase the six shares of stock at the price specified in the by-law. The administrator rejected the offer by letter in October, 1974, and refused to tender the stock in accordance with the terms of the by-law.

The defendant administrator answered raising numerous defenses and filed a counterclaim alleging that the corporation was voluntarily dissolved in 1978 and that the decedent's stock was worth substantially more than $150 per share because the corporate assets had increased in value. A claim was also made that the corporation's officers and directors had breached a fiduciary duty owed to the decedent and the administrator of his estate. In June, 1985, the circuit court conducted a hearing on the plaintiff's motion for summary judgment and shortly thereafter made the following findings of fact and conclusions of law, which we will briefly summarize.

The plaintiff corporation was incorporated in this State in 1937 principally to acquire land for growing timber and for hunting and fishing and to establish, maintain, and operate a hunting and fishing club. The hunting and fishing preserve was for the recreational use of its members and stockholders. The original by-laws of the corporation and all subsequent amendments up until the death of S.S. Burford contained a provision granting the corpora-

tion a one-year option to repurchase the stock at $150 per share from the decedent's administrator or personal representative.

Following a resolution and invitation by the corporation's shareholders, S.S. Burford was issued three shares of stock in the corporation at $150 per share in 1951. Prior to his death, he was issued three additional shares of stock having the same face value. Also, prior to his death, S.S. Burford had voiced some objection to the option to repurchase by-law provision. At a special meeting of the board of directors in July, 1974, the board was authorized to appoint a committee of stockholders to investigate and bring before the board recommendations for changes in the corporate structure. Within three to four weeks after S.S. Burford's death, the board of directors of the corporation recommended to the stockholders substantial amendments to the by-laws of the corporation, including the deletion of the option to repurchase provision.

In October, 1974, the stockholders approved the proposed amendments and deleted the by-law provision granting the corporation an option to repurchase. Some of the assets of the corporation were subsequently liquidated and the proceeds thereof partially distributed to the existing shareholders at a value substantially greater than $150 per share.[2] The circuit court found the corporation had complied fully by electing to repurchase the stock and demanding transfer and tendering payment within the time period set by the provision by its action on September 27, 1974.

We have not had occasion to consider the law relating to the validity of restrictions

---

1. The by-law in issue here provides:
   "Sec. 8. In the event of the death of the holder of a certificate or certificates of stock in this corporation including Class A stock and Class B stock, his executor or administrator, within ninety (90) days after his qualification, shall offer, in writing, any such certificate or certificates to the corporation at the price of $150.00 for each share of stock owned by said deceased stockholder; and the Board of Directors of this corporation shall have one year from the date of said offer within which to purchase such stock certificate or certificates from such executor or administrator; and upon tender by the corporation of $150 for each share of stock owned by the deceased member, the deceased's executor or administrator shall make delivery to the corporation of such certificate or certificates, properly endorsed, evidencing ownership of such stock."

2. The record is silent as to the exact price per share.

governing the transfer of stock.[3] For purposes of this case, we need not explore all of the ramifications of this law. It should be initially noted that this was a "close" corporation. We defined this term in note 1 of *Masinter v. Webco Co.*, 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980), as "a corporation with a small number of shareholders whose shares are not generally traded in the securities market." (Citations omitted).

The New York Court of Appeals in the leading case of *Allen v. Biltmore Tissue Corp.*, 2 N.Y.2d 534, 161 N.Y.S.2d 418, 141 N.E.2d 812 (1957), noted some initial "confusion in the law" as to whether corporate stock was essentially a contractual chose in action or personal property as represented by the stock itself. If stock were deemed personal property, then it was "subject to the time-honored rule that there be no unreasonable restraint upon alienation." 2 N.Y.2d at 540, 161 N.Y.S.2d at 422, 141 N.E.2d at 815. *Allen* came to the conclusion that most jurisdictions regarded stock as personal property and, therefore, restrictions on the transfer must not be unreasonable:

> "The courts have almost uniformly held valid and enforceable the first option provision, in charter or by-law, whereby a shareholder desirous of selling his stock is required to afford the corporation, his fellow stockholders or both an opportunity to buy it before he is free to offer it to outsiders.... The courts have often said that this first option provision is 'in the nature of a contract' between the corporation and its stockholders and, as such, binding upon them....
>
> \* \* \* \* \* \*
>
> "As the cases thus make clear, what the law condemns is, not a *restriction* on transfer, a provision merely postponing sale during the option period, but an effective *prohibition* against transferability itself. Accordingly, if the by-law under consideration were to be construed as rendering the sale of the stock impossible to anyone except to the corporation at whatever price it wished to pay, we would, of course, strike it down as illegal." 2 N.Y.2d at 541–42, 161 N.Y.S.2d at 422–23, 141 N.E.2d at 815–16. (Citations and footnote omitted).

The California Supreme Court in *Tu-Vu Drive-In Corp. v. Ashkins*, 61 Cal.2d 283, 285–86, 38 Cal.Rptr. 348, 349–50, 391 P.2d 828, 829–30 (1964), addressed the question in this fashion:

> "The problem therefore focuses upon the question of whether the present 'restriction upon the right to transfer' is reasonable.
>
> "The term 'reasonable' imports a two-fold requirement. The bylaw must not constitute an unreasonably restrictive curtailment of the right of alienation ... and it must not otherwise unreasonably deprive the shareholder of 'substantial rights.' ... A bylaw reserving a right of first refusal in other shareholders or the corporation does not unreasonably restrict the right of alienation." (Citations and footnotes omitted).

It is generally recognized that reasonable restrictions imposed on the transfer of corporate stock, in the absence of countervailing statutes, will be upheld by the courts. *See, e.g., Matter of Estate of Riggs*, 36 Colo.App. 302, 540 P.2d 361 (1975); *Lawson v. Household Finance Corp.*, 17 Del. Ch. 1, 147 A. 312 (1929), *aff'd*, 17 Del. Ch. 343, 152 A. 723 (1930); *Rowland v. Rowland*, 102 Idaho 534, 633 P.2d 599 (1981); *Swanson v. Shockley*, 364 N.W.2d 252 (Iowa 1985); *Stough v. 501 Ranch, Inc.*, 421 So.2d 1154 (La.App.1982); *Colbert v. Hennessey*, 351 Mass. 131, 217 N.E.2d 914 (1966); *In Re Estate of Weinsaft*, 647 S.W.2d 179 (Mo.App.1983); *F.H.T., Inc. v. Feuerhelm*, 211 Neb. 860, 320 N.W.2d 772 (1982); *Hill v. Warner, Berman & Spitz, P.A.*, 197 N.J.Super. 152, 484 A.2d 344 (1984); *Sorlie v. Ness*, 323 N.W.2d 841 (N.D.1982); *Renberg v. Zarrow*, 667 P.2d 465 (Okla.1983); *see generally* 18A Am. Jur.2d *Corporations* § 683 (1985); 2 F.

---

**3.** In *State ex rel. Stanek v. Kiger,* 155 W.Va. 587, 185 S.E.2d 491 (1971), we refused to issue a writ of prohibition to block a circuit court's order requiring a former employee to transfer his stock to a corporation under a by-law that required him to sell his shares if he left the corporation's employment. We did not discuss the merits of the stock restriction.

O'Neal, Close Corporations § 7.02 (2d ed. 1971); Annot., 61 A.L.R.2d 1318 (1958).

A number of reasons have been advanced as to why such restrictions are necessary, most of which flow from the nature of a close corporation. Because of its limited number of shareholders, many of whom may be actively involved in the business of the corporation, there is a reluctance to let in outsiders and particularly persons in a competitive business. Such outsiders may disrupt an existing harmonious relationship or demand a return on their investment that the others are unwilling to give. It is also a means of preserving control of the corporation. 2 F. O'Neal, *supra*, § 7.02.

Independent of these considerations, a restriction requiring a sale to the corporation can provide a benefit for a stockholder or for the estate of a deceased stockholder. It assures some liquidity on his investment when the stock is not readily marketable.

In the present case, the chief claim against enforcing the restriction is the substantial price disparity. It does not appear in the few reported cases dealing with nonprofit corporations that any special consideration has been given to this fact.[4] We believe that it may play an important role when the issue is price disparity. In the present case, the chief purpose of the corporation was to provide a hunting, fishing, and related recreational facility for the members of the corporation which included some type of a lodge. It does not appear that anyone who bought corporate stock did so for a profit motive, even though subsequent to the decedent's death the corporation's assets were sold for an appreciable sum of money.[5]

Even where the corporation is involved in a business venture, most courts have been reluctant to interfere with stock purchase restrictions because of a disparity between the price to be paid and the true value of the shares. *E.g., Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal.App.3d 315, 122 Cal. Rptr. 816 (1975); *Cutter Laboratories, Inc. v. Twining*, 221 Cal.App.2d 302, 34 Cal. Rptr. 317 (1963); *New England Trust Co. v. Abbott*, 162 Mass. 148, 38 N.E. 432 (1894); *In Re Estate of Weinsaft, supra; Allen v. Biltmore Tissue Corp., supra; Renberg v. Zarrow, supra; Jones v. Harris*, 63 Wash.2d 559, 388 P.2d 539 (1964).[6]

For the foregoing reasons, we conclude that the trial court was correct in holding that the stock purchase restriction was valid as a matter of law and in granting summary judgment to the corporation. Consequently, its judgment is affirmed.

Affirmed.

---

**4.** *E.g., Sanchez v. Centro Mexicano of Sacramento*, 1 Cal.App.3d 756, 81 Cal.Rptr. 875 (1969); *Glenn v. Seaview Country Club*, 154 N.J.Super. 69, 380 A.2d 1175 (1977); *Monacan Hills, Inc. v. Page*, 203 Va. 110, 122 S.E.2d 654 (1961).

**5.** Because the deceased bought his stock with notice of the by-law provision which restricted transferability, we do not deal with the situation where stock restrictions are attempted after the certificates have been originally issued. Where less than all of the shareholders agree to these restrictions, courts have been extremely reluctant to enforce them against a nonconsenting shareholder. *E.g., Casady v. Modern Metal Spinning & Mfg. Co.*, 188 Cal.App.2d 728, 10

Cal.Rptr. 790 (1961); *Lambert v. Fishermen's Dock Co-Op, Inc.*, 61 N.J. 596, 297 A.2d 566 (1972); *Sandor Petroleum Corp. v. Williams*, 321 S.W.2d 614 (Tex.Civ.App.1959); Rands, *Closely Held Corporations: Restrictions on Stock Transfers*, 84 Com.L.J. 461 (1979); 18A Am.Jur.2d *Corporations* § 690 (1985).

**6.** Courts have recognized that price disparity arising from fraud or found to be unconscionable may result in the nonenforceability of a stock repurchase provision. *Swanson v. Shockley, supra; Matter of Estate of Dillon*, 575 P.2d 127 (Okla.App.1977); *In Re Estate of Mihm*, 345 Pa.Super. 1, 497 A.2d 612 (1985).